AMERICAN EMPLOYERS
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

SOUTHERN SEEDING SERVICES,
INC., Defendant–Appellee,

United States Fidelity and Guaranty
Company, Defendant.

No. 90–7231.

United States Court of Appeals,
Eleventh Circuit.

May 22, 1991.

Frank C. Bedinger, III, Freeman & Hawkins, Atlanta, Ga., for plaintiff-appellant.

Stephen D. Heninger, Heninger, Burge & Vargo, Birmingham, Ala., for defendant-appellee.

Before FAY and JOHNSON, Circuit Judges, and PECK *, Senior Circuit Judge.

---

* Honorable John Weld Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

JOHN W. PECK, Senior Circuit Judge:

This appeal arose from the district court's denial of Appellant American Employers Insurance Company's motions for directed verdict, judgment notwithstanding the verdict, new trial, and remittitur. American seeks reversal of the compensatory and punitive damage awards on the grounds that the compensatory damages were based on speculation and conjecture and that the punitive damages were the result of standardless jury discretion which violated American's due process rights under the fourteenth amendment. For the reasons stated below, we affirm the award of compensatory damages and remand the issue of punitive damages.

## FACTS

In July 1984, Appellee Southern Seeding Services, Inc. (Southern Seeding) was a landscaping subcontractor on a renovation project for a municipal park in Birmingham, Alabama. In the course of the work, Southern Seeding erroneously removed some trees. Southern Seeding had a general liability policy with Appellant American Employers Insurance Company (American), a subsidiary of Commercial Union Insurance Company. Southern Seeding notified American of the erroneous tree removal and an investigation ensued. Meanwhile, USF & G, the surety for the general contractor on the job, paid Birmingham $100,000 for the loss and made a claim against Southern Seeding.

In November 1984, USF & G unsuccessfully offered to arbitrate the claim with American. In May 1985, USF & G sued Southern Seeding to collect the $100,000 claim. American provided a defense attorney for Southern Seeding under a reservation of rights. On more than one occasion, the defense attorney advised American that the chances of success at trial were slim. He advised settling the case and assessed the settlement value at between $40,000 and $60,000. However instead of pursuing settlement, American requested a coverage opinion from another law firm in January 1987. The firm determined that there was

no coverage for the loss under Southern Seeding's policy. On February 17, 1987— two and one half years after the loss— American wrote to Don Haney, the owner of Southern Seeding, advising him that a declaratory judgment action was going to be filed regarding the coverage under the policy. The trial on USF & G's $100,000 claim began on March 2, 1987 and resulted in a $100,000 verdict against Southern Seeding. Southern Seeding filed an appeal. During the pendency of the appeal, American failed to obtain a supersedeas bond and USF & G filed a writ of garnishment against Southern Seeding's bank accounts on May 13, 1987. The garnishment was removed approximately two weeks later. Southern Seeding lost the appeal and paid the judgment plus $8,000 in interest.

In the declaratory judgment action, the court declared that American's policy did not provide coverage for Southern Seeding's judgment. However, a counterclaim in which Southern Seeding alleged bad faith in American's handling of the underlying case proceeded to trial. American moved for a directed verdict at the close of Southern Seeding's case and at the close of evidence. Both motions were denied. The jury returned a verdict for Southern Seeding in the amount of $400,000 in compensatory damages and $750,000 in punitive damages. American made a motion for judgment notwithstanding the verdict and alternative motions for new trial and remittitur of the excessive verdict, which were denied. American appealed to this court.

### Compensatory Damages

■ American contends that the award for compensatory damages cannot stand because the evidence supporting the award was based on speculation and conjecture which is prohibited by Alabama law. *Mall, Inc. v. Robbins*, 412 So.2d 1197 (Ala.1982). Don Haney testified that Southern Seeding lost profits because the garnishment placed on its bank accounts made it unable to obtain bid bonds. The prime example of this was Southern Seeding's aborted bid on

an Alabama mine reclamation project. Southern Seeding had prepared a $2.2 million bid on the project. However, Haney testified that his bonding agent informed him that he could not obtain the bond because of the garnishment of Southern Seeding's bank account. Haney testified that his profit margin on such jobs was usually between 20 and 30 per cent. He also testified that it was customary for the state of Alabama to award jobs to the lowest bidder. The project was awarded to another contractor for $2,584,979.70.

American notes that the damage award of $400,000 is approximately 18% of the $2.2 million bid and suggests that the jury based its award on this testimony. American concedes that Haney's testimony was proper at the time given, but asserts that the judge should not have allowed the jury to consider it with regard to the damage award without buttressing testimony by the bonding agent. American charges that Haney's inquiry about the bond from his usual bonding company was merely a cursory attempt to obtain the bond. American contends that there was no evidence that if Southern Seeding had submitted its bid that it would have received the contract. American notes that Southern Seeding had never received a bond for a job as large as the mine reclamation project. American further contends that there is no evidence that Southern Seeding would have made a profit on the job. Variables such as equipment repairs or bad weather could affect the profit margin. American concludes that the evidence of lost profits was based on Haney's speculation and conjecture and should not have been considered by the jury.

Another component of Southern Seeding's damages stemmed from the sale of two bulldozers to satisfy the underlying judgment. Haney testified that the equipment was sold at a loss and that its sale forced him to bid on smaller jobs. American disputes this testimony on the grounds that Southern Seeding bid on a $650,000 project in September 1987 after the equipment was sold. This bid was larger than any job Southern Seeding had bid upon in the past. Thus, American concludes that

Haney's testimony regarding lost profits due to the sale of the equipment is speculative and conjectural. American contends that the court erred in allowing the jury to consider such flawed testimony in its deliberations.

Southern Seeding submits that ample evidence which is neither speculative nor conjectural supports the compensatory damage award. Southern Seeding notes that American allowed Haney's testimony to stand unchallenged by contrary evidence. American introduced no evidence on the fair market value of Southern Seeding's equipment that was sold to satisfy the judgment. With regard to the bond on the mine reclamation project, Southern Seeding notes that the bid was due only two weeks after Southern Seeding's bank accounts had been garnished. Furthermore, Haney testified that he had successfully completed jobs for the state of Alabama in the past with a 20 to 30 per cent profit on such projects. Southern Seeding notes that the Alabama Supreme Court has approved damages for lost profits for an unestablished business as long as they were shown with reasonable certainty. *Super Valu Stores, Inc. v. Peterson*, 506 So.2d 317, 327 (Ala.1987). Southern Seeding argues that its losses are much less speculative than those of an unestablished business.

■ In reviewing the denial of motions for directed verdict or judgment notwithstanding the verdict, this court must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the party in whose favor the verdict was rendered. *Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1528 (11th Cir.1989). Thus, we need only conclude that the jury could have drawn reasonable inferences from the evidence presented to affirm the award. Southern Seeding claimed damages for four items: 1) the difference in the amount of judgment and the amount for which the case could have been settled prior to trial; 2) the loss on the sale of the equipment; 3) the lost profits due to the necessity of bidding on smaller projects as a result of the sale

of the equipment; and 4) the lost profits on the mine reclamation project.

With regard to the first item, evidence was presented that the case could have been settled for $50,000. However, American did not pursue settlement or notify Haney of the likelihood that the trial of the underlying case would be unsuccessful. Eventually, Southern Seeding was required to pay a $108,000 judgment. Thus, the jury could have reasonably inferred that Southern Seeding was damaged in some measure by American's failure to keep it informed about settlement possibilities.

With regard to the sale of the equipment, Haney testified that he sold it at approximately a $60,000 loss and had to do so to satisfy the judgment. No contrary evidence was offered by American as to the value of the equipment. Haney also testified that he had been unable to replace the equipment and that its loss had restricted his ability to bid on larger jobs. American makes much of the fact that Southern Seeding bid on a $650,000 job after the sale of the equipment. Viewing the evidence in the light most favorable to Southern Seeding, this one bid, which was unsuccessful, does not prove that Southern Seeding was not impaired in its bidding ability for some period of time by the loss of the equipment. Thus, the jury could have reasonably inferred that Southern Seeding was damaged in some measure by the loss of the equipment and the concomitant loss of bidding ability.

With regard to the mine reclamation project, American argues that Southern Seeding never submitted a bid. However, Haney testified that the garnishment on Southern Seeding's bank accounts resulting from American's failure to obtain a supersedeas bond prevented him from obtaining the bond necessary to submit the bid. American argues that the mine project was the largest job that Southern Seeding had ever bid on. However, Haney testified that he had successfully completed jobs for the state of Alabama in the past and that Alabama usually awarded contracts to the lowest bidder. Thus, the jury could have concluded that Southern Seed-

ing was damaged in some measure by American's failure to obtain the supersedeas bond. The total of the claimed damages exceeded $700,000. Since the jury only awarded $400,000 in compensatory damages, it is clear that it weighed the evidence and awarded the amount it thought appropriate. Great deference and weight is to be given to jury verdicts. *Quality Foods, Inc. v. U.S. Fire Insurance Co.*, 715 F.2d 539 (11th Cir.1983). Accordingly, we affirm the award of compensatory damages.

### Punitive Damages

In addition to compensatory damages, the jury awarded $750,000 in punitive damages. The essence of American's argument is that the punitive damage award is violative of its due process rights because the award was left to the discretion of the jury without specific legal standards to govern it.

During the pendency of this appeal, *Pacific Mutual Life Insurance Co. v. Haslip*, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), an Alabama case involving a due process challenge to a punitive damages award, was decided by the United States Supreme Court. While the Court in *Haslip* acknowledged that unlimited discretion "may invite extreme results that jar one's constitutional sensibilities", it declined to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case." *Id.*, 111 S.Ct. at 1043. The Court stated that general concerns of reasonableness and adequate guidance from the court in jury cases entered into the constitutional calculus. *Id.* In determining that the award in *Haslip* was not violative of due process, the Court focused on three factors: the jury instructions; post-trial review of the award; and procedures for Alabama Supreme Court review of the award.

With regard to jury instructions, the Court noted that while the jury had significant discretion in the award of punitive damages, the discretion was not unlimited. *Id.* at 1044. In instructing the jury, the

trial court expressly noted that punishment and deterrence were the purposes of punitive damages. The trial court also stated that the jury was not compelled to award punitive damages and that the character and degree of the wrong should be taken into consideration in any award. *Id.* at 1037, n. 1. The Supreme Court determined that these instructions adequately informed the jury of the purpose of punitive damages, identified them as punishment for civil wrongdoing, and explained that they were not compulsory. *Id.* at 1044. The Court stated that these instructions reasonably accommodated the interests of the state in deterrence and retribution and the interest of the defendant in rational decisionmaking. *Id.* The Court concluded that due process was satisfied as long as discretion was exercised within reasonable constraints. *Id.*

Next, the Court noted that in *Hammond v. City of Gadsden,* 493 So.2d 1374 (Ala. 1986), the Alabama Supreme Court established procedures for the trial court's review of punitive damage awards. *Hammond* requires the trial court to "reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages." *Id.* at 1379. The Alabama Supreme Court suggested that factors such as the "culpability of the defendant's conduct," "the desirability of discouraging others from similar conduct," "the impact on the parties," and "impact on innocent third parties" were all appropriate for the trial court's consideration. *Id.* In *Haslip,* the U.S. Supreme Court stated that the *"Hammond* test ensures meaningful and adequate review by the trial court wherever a jury has fixed the punitive damages." *Haslip, supra,* at 1044. The *Hammond* factors were expanded in *Green Oil Co. v. Hornsby,* 539 So.2d 218, 223–24 (Ala.1989). Other permissible inquiries include: 1) whether the punitive damages bear a reasonable relationship to the harm that has occurred or is likely to occur; 2) the reprehensibility of the defendant's conduct, the duration of the conduct, the defendant's awareness, any concealment, and the frequency of similar past conduct; 3) the profitability of the wrongful conduct to the defendant; 4) the financial position of the defendant; 5) the costs of litigation; 6) imposition of criminal sanctions against the defendant; 7) and other civil awards against the defendant for the same conduct.

Finally, the U.S. Supreme Court in *Haslip* noted that the Alabama Supreme Court provides an additional check on the jury's discretion. In reviewing punitive damage awards, the Alabama Supreme Court employs a comparative analysis and then applies detailed substantive standards that it enunciated in *Green Oil.* This final review ensures that the award does not exceed an amount that accomplishes society's goals of punishment and deterrence. *Haslip,* at 1045.

The Court in *Haslip* concluded that the application of these standards imposed a "sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive damages." *Id.* The Court further noted that Pacific Mutual had had the benefit of all of Alabama's procedural protections. *Id.* at 1046. The jury instructions had been adequate. The trial court held a post-trial hearing and made findings as required by *Hammond.* Finally, the Alabama Supreme Court reviewed the punitive damage award and affirmed it. Thus, the Court concluded that although the punitive damages were four times the compensatory damages and more than 200 times the plaintiff's out-of-pocket expenses, the award did not violate Pacific Mutual's due process rights. *Id.*

█ Although the present case is also a due process challenge to an award of punitive damages by an Alabama jury, it differs from *Haslip* in that it was prosecuted in federal court rather than state court. The following jury instruction was given:

The award of punitive damages is discretionary with you. In making this decision, you should consider the underlying purposes of punitive damages, to punish the defendant for extreme conduct or to deter it and others like it from similar conduct in the future. If you decide to award punitive damages, then you should

again consider the underlying purpose of punitive damages at arriving at an appropriate amount to be awarded. This is left to your best judgment and good discretion. There are no rules of thumb under the law for me to give you except, of course, you consider what was done and the purpose of punitive damages....

This instruction is substantially similar to the one in *Haslip* in that it enlightened the jury as to the nature and purpose of punitive damages, identified punitive damages as punishment for civil wrongdoing, and explained that their imposition was not compulsory. Thus, we conclude that the jury instruction in this case comported with the due process requirements announced in *Haslip*.

■ However, we cannot say that the post-trial review of the punitive damages met the *Haslip* standards. After trial, American moved for judgment notwithstanding the verdict, and in the alternative, a new trial and remittitur of the excessive award. Unfortunately, the district court denied these motions without comment. Clearly this does not comply with *Hammond*'s requirement to reflect in the record the reasons for refusing to interfere with the jury's verdict. Although *Hammond* is state law and the trial court in this case was a federal district court, the U.S. Supreme Court has stated:

> In reviewing an award of punitive damages, the role of the District Court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered. The Court of Appeals should then review the District Court's determination under an abuse of discretion standard.

*Browning–Ferris Industries, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). *See also, Quality Foods, Inc. v. U.S. Fire Insurance Co.*, 715 F.2d 539, 542 n. 2 (11th Cir.1983) (determination of whether jury verdict is excessive in a diversity case is left to the state substantive law); *Estate of Jackson v. Phil-*

*lips Petroleum Co.*, 676 F.Supp. 1142, 1152 (S.D.Ala.1987) (state substantive law determines whether the verdict was "excessive" in the sense of being vulnerable to a conditional or unconditional new trial order).

We conclude that by failing to apply the *Hammond* or *Green Oil* factors and reflect its reasoning for the denial of the motions in the record, the district court made no determination as to whether the verdict was within the limits set by state law. Therefore, we remand this cause to the district court for further consideration of the punitive damages issue consistent with this opinion. In making its review, the district court should apply the *Hammond* and the *Green Oil* factors in order to provide an adequate record if further appellate review is necessary.

Accordingly, the compensatory damage award is AFFIRMED and the punitive damage award is REMANDED.