[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12920
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00322-PAM-MRM

STEVE LONG,

Plaintiff - Appellee,

versus

EAST COAST WAFFLES, INC.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 8, 2019)

Before JILL PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

East Coast Waffles, Inc. appeals from the district court's judgment in favor of plaintiff Steve Long after a jury found East Coast responsible for Long's injuries under a theory of premises liability.  On appeal, East Coast asserts that the district court abused its discretion in (1) failing to strike expert witness Dr. Conidi's testimony for noncompliance with Rule 26 and (2) denying East Coast a new trial or remittitur for excessive damages.  After careful review of the record, and finding no abuse of discretion, we affirm.

## I

To start, we review a district court's decision to admit or exclude expert testimony for failure to comply with Federal Rule of Civil Procedure 26 for an abuse of discretion.  *See Romero v. Drummond Co, Inc.*, 552 F.3d 1303, 1314 (11th Cir. 2008).  This means that a district court has "a range of choice" that we will not disturb absent a mistake of law.  *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005) (quotations omitted).

Federal Rule of Civil Procedure 26 requires a party to disclose any expert witness who will testify at trial.  *See* Fed. R. Civ. P. 26(a)(2).  This includes not only identification of the expert, but also the provision of a written report containing "a complete statement of all opinions" and "the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  Disclosure must occur "at the times and in the sequence that the court orders," and, in any event, "at least 90 days before the date

set for trial or for the case to be ready for trial." *Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 811 (11th Cir. 2017) (quoting Fed. R. Civ. P. 26(a)(2)(D)).

The disclosure requirements aim to provide parties with a reasonable opportunity to prepare effective cross examination and arrange for rebuttal testimony from other experts if needed. *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (quotations omitted). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006). Indeed, Federal Rule of Civil Procedure 37(c)(1) states that a party who fails to provide information or identify a witness as required by Rule 26(a) or (e) may not use that information or witness at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008).

Although Rule 37 allows a district court to exclude a witness as a sanction for a Rule 26 violation, it is well settled that "the admission of expert testimony is a matter left to the discretion of the district court." *Lakeman v. Otis Elevator Co.*, 930 F.2d 1547, 1554 (11th Cir. 1991) (citation omitted). Because of this, we will

not overturn a district court's decision to admit or exclude expert testimony unless it is "manifestly erroneous." *Id.*; *see also id.* (holding that the trial court did not abuse its discretion in allowing expert testimony on matters not disclosed where the opposing party's counsel was "well versed" in those matters and "capable of cross-examining [the experts] effectively"); *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978) (declining to find reversible error when, although the plaintiff failed to disclose his intended use of an expert witness, defense counsel admitted to knowing that the witness "would likely" be called).

The parties here do not dispute that Long's initial disclosure of Dr. Conidi did not comply with Rule 26. To be specific, the disclosure was filed 65 days late and the written report was not provided until a few months after that, by order of the district court. East Coast further contends that, not only was the filing deficient, the district court compounded error by repeatedly denying its various motions to rectify the situation, including a motion to enlarge discovery, a motion to postpone trial, and a motion in limine.

The record shows, however, that after Long disclosed Dr. Conidi in June 2017 and provided the accompanying report in November 2017, East Coast failed to depose Dr. Conidi, retain a rebuttal expert, or object in any way until it filed a motion in limine in February 2018—on the eve of trial. Although East Coast filed various motions in the meantime, none challenged Dr. Conidi's testimony—

4

instead, East Coast requested to delay trial based on its lead counsel's maternity leave and its second-chair counsel's departure from her firm. The district court found these late-in-the-game attempts to delay trial "shocking" given that East Coast "appear[ed] to have done nothing" to complete discovery between October 2016 and July 2017 or to timely seek any extension of the case management deadlines. By the time East Coast objected to Dr. Conidi in its motion in limine, the district court found its alleged "surprise" less than credible, stating that, while it did not condone Long's failures to comply with scheduling orders, the "only prejudice to [East Coast] now is of its own making."

While untimely disclosures are certainly disfavored, we cannot say, on these facts, that the district court manifestly erred in allowing Dr. Conidi to testify. Although Rule 37 certainly permits a district court to exclude a witness based on a party's noncompliance with Rule 26, district courts are entitled to broad discretion in managing pretrial discovery matters. *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002). Although the district court here did not use the term "harmless," it appears to have implicitly (and reasonably) concluded that East Coast had sufficient time to cure any surprise or harm from the tardy disclosure: Long disclosed Dr. Conidi more than two months before the close of discovery—in time for East Coast to depose him or obtain a rebuttal witness—and nearly eight

months before trial—in time for East Coast to prepare cross-examination. *See, e.g.*, *Lakeman*, 930 F.2d at 1554; *Shelak*, 581 F.2d at 1159.

We decline to second-guess the district court's pre-trial discovery management in this case. Even if we might have decided differently in the first instance, we cannot say that the court abused its discretion in determining that East Coast had sufficient notice of Long's expert and that any prejudice was of its own making.

## II

East Coast also argues that, if nothing else, it is entitled to a new trial or remittitur because the jury awarded Long excessive damages. We review a district court's denial of a motion for a new trial for abuse of discretion. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013) (citation omitted). The same goes for a district court's denial of a motion for remittitur. *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013).

A new trial for excessive damages should be ordered only when "the verdict is so excessive as to shock the conscience of the court." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985). In a diversity action, we look to state law—Florida law here—to assess whether a verdict is excessive, although we apply federal law to our review of the district court's decision to order or deny a new trial on the issue of excessiveness. *Mason v. Ford Motor Co.*, 307 F.3d

6

1271, 1276 (11th Cir. 2002).  Under Fla. Stat. § 768.74(5), a court reviewing an allegedly excessive damages award must consider whether the amount awarded is "indicative of prejudice, passion, or corruption on the part of the trier of fact" or instead "bears a reasonable relation to the damages proved" and "is supported by evidence." *Id.*

Rather than a new trial, a remittitur order reducing a jury's award to the outer limit of the proof may be the appropriate remedy where the damage award is not necessarily the product of undue passion or prejudice, but exceeds the amount established by the evidence nonetheless.  *See Goldstein*, 758 F.2d at 1448; *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1284 (11th Cir. 2000).  In evaluating an appeal from a district court's denial of a motion for remittitur, our job is to "independently determine the maximum possible award that is reasonably supported by the evidence in the record." *Frederick*, 205 F.3d at 1283.  To affirm, we need only conclude that the jury could have drawn reasonable inferences from the evidence presented to reach the award.  *Am. Emp'rs Ins. Co. v. S. Seeding Servs., Inc.*, 931 F.2d 1453, 1455 (11th Cir. 1991).  Our review of compensatory damages for intangible, noneconomic harms is particularly deferential "because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (quotations omitted).

7

East Coast challenges both the future medical expenses and the noneconomic damages awarded.  As to the first, it argues that the evidence does not support the damages awarded because although Long claimed future medical expenses of only $65,100, the jury awarded him $100,000.  But this discrepancy does not, standing alone, demonstrate that the award was excessive—we must determine instead whether the jury could have reasonably inferred $100,000 in damages from the record evidence.  *Am. Emp'rs Ins. Co.*, 931 F.2d at 1455.

According to Long's dental expert, Dr. Souviron, the removal of Long's fractured teeth, crown replacements for the duration of his life, and orthodontic appliances brought the estimated dental expenses alone to over $70,000.  And while Dr. Conidi did not testify as to the cost of initial MRI testing, he stated that additional neurological testing to determine the best course of future treatment would approximate $6,000—not including the future treatment itself.  Based on this testimony—at least $76,000 in dental and neurological treatment with a likelihood of additional treatment required—the district court did not abuse its discretion in determining that the evidence reasonably supported an award of $100,000 in future medical expenses.  *See Am. Emp'rs Ins. Co.*, 931 F.2d at 1455.

Next, East Coast argues that the $325,000 in past noneconomic damages and $450,000 in future noneconomic damages awarded are inconsistent with the record because Long has resumed his work as a trucker and continues to enjoy shooting

8

guns and riding his motorcycle.  The record also shows, however, that Long's injury resulted in cognitive deficits, chronic headaches, and cervical pain, all of which he will probably experience for life, along with an increased risk of developing dementia in the future.  Moreover, Long reports having lost a large portion of his trucking business due to injury-related short-term memory problems.  On these facts, we see no reason to question the fact finder's determination of the amount appropriate to compensate for Long's noneconomic losses.  *See Ferrill*, 168 F.3d at 476.

**AFFIRMED.**