**ETHICON, INC., et al., Appellants,**

**v.**

**Jo Ann PARTEN et vir, Appellees.**

**No. 1033.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Feb. 26, 1975.

Rehearing Denied March 19, 1975.

Jerry V. Walker, Fulbright & Crooker, Houston, for appellants.

Ralph K. Miller and Jim Perdue, Miller, Gann & Perdue, Ralph E. Gustafson; Stafford, Patten & Gustafson, Houston, Scott Thrash and William W. McNeal, McNeal, Thrash & Williams, Alvin, for appellees.

CURTISS BROWN, Justice.

This is a products liability and medical malpractice suit.

Appellee Jo Ann Parten, joined by her husband, brought suit for damages against appellants, Ethicon, Inc. (Ethicon), Johnson & Johnson, Inc. (J & J), and Curtis Surgical Supply Company (Curtis) and against Alvin's Gulf Coast Hospital, Inc. (the Hospital), and appellee, Dr. Kenneth Chambler (Dr. Chambler). The Hospital brought a cross-action against Ethicon for indemnity. Dr. Chambler brought a cross-action against Ethicon, J & J, Curtis, and the Hospital for contribution and indemnity. Ethicon then brought a cross-action against Dr. Chambler and the Hospital for contribution and indemnity. After all parties had rested at trial, the court granted instructed verdicts for Dr. Chambler and the Hospital on all actions and cross-actions against them. The case was then submitted to a jury on special issues. The trial court entered judgment, based on the verdict, that all parties take nothing by their cross-actions and that the Partens recover their damages of $81,000, as found by the jury, from Ethicon, J & J, and Curtis, jointly and severally. The appellants now challenge the judgment for the Partens and the instructed verdict for Dr. Chambler.

Dr. Chambler performed surgery on Mrs. Parten on November 6, 1970, at the Hospital. During surgery, a surgical needle, manufactured by Ethicon and J & J, and distributed by Curtis, broke off in her vaginal cuff and Dr. Chambler was unable to retrieve it. The needle remains in Mrs. Parten and is the cause of her physical and emotional damages for which this suit was brought. The jury made the following findings: An Ethicon needle broke off in Mrs. Parten during surgery. The needle was defective such that it was unreasonably dangerous to be used in the surgery. The defect exposed Mrs. Parten to an unreasonable risk of harm and was a producing cause of her injuries. Ethicon failed to warn Dr. Chambler of the defect, and it was reasonably foreseeable that surgeons might grasp needles in the defective area. This failure to warn exposed Mrs. Parten to an unreasonable risk of harm and was a producing cause of her injuries. Dr. Chambler did not use the needle in a manner not intended or reasonably to be foreseen by the manufacturer. The jury found the following damages: Past physical pain and mental anguish, $10,000; future physical pain and mental anguish, $30,000; past loss of earnings, $2,500; future loss of earning capacity, $15,000; past loss to Mr.

Parten of his wife's services $2,500; future loss to Mr. Parten of his wife's services, $10,000; past medical expenses, $1,000; future medical expenses, $10,000.

The evidence established that Ethicon manufactures several types of surgical needles to which the suture material is attached in the manufacturing process. A hole is drilled in the blunt end. The suture material is fed into the hole, and the needle is then crimped on two sides to hold the suture. This crimping creates a swaged area in the needle. Under microscopic analysis it is apparent that the metal in the swaged area is often cracked in the crimping process. This weakens the needle at that point.

During suturing, surgeons handle surgical needles with needle holders, which are very much like needle-nose pliers. Generally, the surgeon will place the holders about two-thirds of the way back from the point to push the needle into tissue. Then he will apply the holder to the point and pull the needle through. Dr. Chambler testified that in thick tissue, it is also sometimes necessary to push the needle through by applying the holder to the swaged end and using gentle pressure. He was doing just this in the present case when the needle broke off in the swaged area.

■■■ Appellants attack the liability findings on three gounds. First, they state that there was no evidence on which to submit the issues to the jury. Second, they state there was insufficient evidence to submit them. Third, they state that the court erred in entering judgment and overruling appellants' motion for new trial because the jury's findings were against the great weight of the evidence. Before considering the points, we must point out that the purported "insufficiency" points are improper. If there is any evidence, more than a scintilla, to support it, the trial court may not refuse to submit an issue to the jury, even if there is insufficient evidence to support an affirmative finding.

A directed verdict is proper only when there is no evidence to support the submission of issues. Carsey v. Bolin, 427 S.W. 2d 721 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ). These points cannot, therefore, be considered. Other than on the "intended use" and foreseeability issues, appellants did not have the burden of proof on any of the liability issues. Therefore, their proper attack should have been that the evidence was insufficient to support the jury's findings, rather than that the issues should not have been submitted. *See* Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960); O'Connor, Appealing Jury Findings, 12 Hous.L.Rev. 65 (1974). Nevertheless, since both great weight and insufficiency points invoke our fact-finding power, we will consider the sufficiency of the evidence under appellants' points. *See* Gilbert v. Canter, 500 S.W.2d 557 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.).

Texas has adopted the doctrine of products liability as outlined in the Restatement (Second) of Torts §§ 402A, 402B. Crocker v. Winthrop Laboratories, Tex., 514 S. W.2d 429 (1974); McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup. 1967); Shamrock Fuel & Oil Sales Co. v. Tunks, 416 S.W.2d 779 (Tex.Sup.1967). Section 402A provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

A product may be rendered defective through a defect in material or manufacture, a defect in design, or the failure to warn properly of a dangerous product characteristic. McKisson v. Sales Affiliates, Inc., *supra*; Helicoid Gage Div. of Am. Chain & Cable Co. v. Howell, 511 S.W.2d 573 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ pending) ; Pizza Inn, Inc. v. Tiffany, 454 S.W.2d 420 (Tex.Civ App. —Waco 1970, no writ); Noel, Products Defective Because of Inadequate Directions or Warnings, 23 S.W.L.J. 256 (1969). The doctrine has also been extended to by-standers as well as ultimate users or consumers. Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex.Sup.1969). To recover in a products liability case, it is necessary for a plaintiff, covered by the doctrine, to show that the product was defective in one or more of the ways mentioned above; that the defect made the product unreasonably dangerous; and that the defect was a producing cause of his or her injuries. No showing of proximate causation is required, and contributory negligence, either before or after discovery of the defect in question, does not bar recovery. Henderson v. Ford Motor Company, Tex., 519 S.W.2d 87 (1974). Defenses in a products liability case include the use of the product for an unintended purpose in a manner not foreseeable by the manufacturer. Sales, An Overview of Strict Tort Liability in Texas, 11 Hous.L.Rev. 1043, 1070 (1974). Assumption of risk may be a defense if it is shown that: (1) the plaintiff voluntarily exposed himself to the risk; (2) with knowledge and appreciation of the danger involved; (3) by means of a free and intelligent choice. Henderson v. Ford Motor Company, *supra*.

After reviewing the evidence in accordance with the proper standards, *see* Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, *supra,* we have determined that there was sufficient evidence to support the jury's findings on defect in manufacture. We do not, therefore, need to pass on the issues dealing with failure to warn. Appellees' expert witness, Mr. Anderson, testified in response to a hypothetical based on facts of evidence, that the needle failed "because of the severely defective manufacture (sic) and the crimping operation where the suturing thread was inserted and the criming caused the needle to become cracked, almost to the point of failure." Anderson also testified that he examined the portion of the needle which remained in the needle holder when the needle broke off in Mrs. Parten, as well as two new Ethicon needles. He stated that the broken needle and one of the new ones showed severe cracking in the swaged area.

Appellants complain that the trial court erred in allowing Anderson to testify because his opinion was based on hearsay as to Dr. Chambler's actions during Mrs. Parten's surgery. First, appellants have not preserved error in this regard. The only assignment in the motion for new trial which bears on Anderson's testimony complains that he was not qualified to give an opinion. The point of error is not germane to an assignment of error and is, therefore, waived. Texas Rules of Civil Procedure, rule 418(b). Second, Anderson's testimony was in response to hypothetical questions. Dr. Chambler, himself, testified as to his surgical conduct and procedure. Anderson's testimony was not based on hearsay.

Dr. Chambler testified that he had, since the surgery, broken a new Ethicon needle merely by grasping it with needle holders. Mr. Lee Ben Del, the Supervisor of Needle Development for Ethicon, testified that he had calculated that cracks in the swaged area would reduce the strength of the nee-

dle in that area by nine percent, in addition to a forty-four percent reduction caused by the drilling and crimping. He stated that Ethicon does not intend to crack the needle during crimping and takes steps to prevent this.

Comment 1 of § 402A recognizes that to be a user or consumer, one need not have purchased the product. Especially applicable is the illustration in comment 1 that "[c]onsumption includes all ultimate uses for which the product is intended, and the customer in a beauty shop to whose hair a permanent wave solution is applied by the shop is a consumer." Appellants attempt to convince us that Dr. Chambler was the sole user or consumer, but it is obvious that § 402A also contemplates Mrs. Parten as a consumer. Comment g defines a "defect" as "a condition not contemplated by the ultimate consumer which will be unreasonably dangerous to him." Comment i defines "unreasonably dangerous" as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

There was no testimony as to Mrs. Parten's expectations as to the needle. However, Dr. Chambler, an experienced surgeon, testified that, although he knew all needles were weaker in the swaged area, he did not expect them to break when handled in the proper manner.

There remains the question of whether the defect, which caused the needle to break, was a producing cause of Mrs. Parten's injuries. There was testimony that Mrs. Parten had previously had a heart attack which was somewhat disabling. The surgery in which the needle broke was actually the second attempt to stop bleeding following a vaginal hysterectomy. Mrs. Parten complained of sharp pains in her abdomen and numbness in her legs. Her husband testified that the presence of the needle in her body, which could migrate and rupture sensitive organs or blood vessels, had caused her emotional strain and that she had developed a short temper. Appellants introduced testimony that the needle was in such a position that it could not cause numbness in her leg, but there was also testimony that Mrs. Parten complained of numbness prior to being told that the needle had been left in her body. It is true that some of her injuries might be traceable to earlier medical problems, but recovery under products liability requires only producing cause, not proximate cause. We are satisfied that there is sufficient evidence to meet this burden of proof.

Appellants complain that the finding that it was reasonably foreseeable that surgeons might grasp the needle in the swaged area was supported by no evidence or is against the great weight of the evidence. They also contend that the finding that the needle was not used by Dr. Chambler in a manner not intended or reasonably foreseeable by Ethicon is against the great weight of the evidence. Foreseeability applies in products liability only to the duty to warn of dangerous product characteristics. Noel, Products Defective Because of Inadequate Directions or Warnings, *supra*. Since we do not here consider the liability issues on warning, we need not consider the foreseeability issues. The intended use issue attempts to establish the misuse defense, mentioned above. The testimony of Dr. Chambler is alone sufficient to support the jury's finding. He testified that surgeons must often grip a needle in the swaged area to complete a stitch in thick tissue. Furthermore, Texas has adopted the broad view of intended use. Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex. Sup.1968). Under the standards of that case, it is clear that Dr. Chambler's use was intended, because it arose from the use for which the needle was both manufactured and sold.

Appellants contend that the damages awarded were excessive. After re-

viewing the evidence of damages, we cannot say they were excessive, under the rules handed down by our Supreme Court. *See* Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959); Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950). Mr. and Mrs. Parten both testified to her pain and restricted activity. Mrs. Parten is thirty-eight years old and has a life expectancy of thirty-nine years. During that time she will need constant observation by doctors to make certain the needle does not migrate and cause her further injuries. Mrs. Parten is unable to continue many of the duties in the home. Under these facts we cannot say the damages are excessive.

The sole remaining question on this appeal is the propriety of the instructed verdict for Dr. Chambler. We note, in passing, that appellants' claim for contribution or indemnity from Dr. Chambler presents a novel and difficult question. Appellants' liability is based on a product defect and producing cause. Dr. Chambler's alleged liability would be based on medical malpractice and would require findings of negligence and proximate cause. It is difficult to say how defendants in such a position, operating under different bases of liability, should be required to share the burden. Nevertheless, we need not reach this question, because the instructed verdict was proper in this case.

 The standard of proof for medical malpractice was outlined in Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949). For a patient to recover for malpractice, he must prove by a doctor of the same school of practice as the defendant, both that the diagnosis or treatment complained of was negligent, and that it was a proximate cause of his injuries. The rationale of this standard is that the court and jury require expert advice in assessing the complexities of medical services. It follows, therefore, that the same standard must apply in actions by parties other than a patient, such as in this action for contribution or indemnity.

 The only doctor to testify was Dr. Chambler himself. Appellants argue that a defendant doctor can establish the medical standard by which his own conduct is to be judged, citing Wilson v. Scott, 412 S.W.2d 299 (Tex.Sup.1967). We agree that this is an alternative to the "doctor of the same school" requirement of Bowles v. Bourdon, *supra*. Nevertheless, Dr. Chambler's testimony did not establish that he failed to meet the standards to which he had testified. Dr. Chambler began his testimony by saying that he really did not remember his exact actions prior to the moment the needle broke. He did state that his usual practice, in accord with good medical practice, was to check the positioning of each needle in the needle holder as he received it from the assisting nurse. He is quite sure he followed that procedure. He testified that it is not proper to place the needle holder on the swaged area for the initial insertion of the needle because of the force used. He went on to say that it is common, accepted practice to hold a needle in the swaged area to push an already inserted needle through tissue. Appellants never contradicted this standard by medical testimony. From Dr. Chambler's testimony, then, he was following good medical practice at the time the needle broke. There is no evidence of medical malpractice from a qualified witness in this record. The instructed verdict was, therefore, proper.

Affirmed.