**K-MART CORPORATION, Appellant,**

v.

**Pauletta PEARSON, Guardian on Behalf of the Person and Estate of Ernest RAMOS, Appellee.**

**No. 01–89–01215–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 3, 1991.

John P. Venzke, Willie Ben Daw, III, Houston, for appellant.

Michael A. Caddell, Houston, for appellee.

Before DUGGAN, COHEN and PRICE,[1] JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a judgment entered by the probate court on a jury verdict in a personal injury lawsuit brought by appellee, Pauletta Pearson, guardian on behalf of the person and estate of Ernest Ramos, NCM ("Ramos"), against appellant, K–Mart Corporation ("K–Mart"). The judgment awarded Ramos $340,281 in past damages, $1,378,589 in future damages, and $2,200,000 in exemplary damages.

On October 28, 1982, Ernest Ramos entered the K–Mart store in El Paso to purchase household paneling. After the purchase, he accompanied a store employee to the customer loading area at the rear of the store to pick up his materials. The loading area was enclosed by a wire fence that opened to the outside through a large double rolling steel gate. The employee unlocked the gate and pushed it open. Within seconds, the gate slipped off its track and struck Ramos at the right base of his skull, neck, and right shoulder. Ramos was stunned, but was not rendered unconscious. He gathered himself up and loaded the paneling onto his vehicle. On his way home, Ramos noticed he was bleeding and stopped at a hospital emergency room. However, the hospital refused to treat him because he had no insurance. He was treated that night for his injuries by Dr. Jack Donald, a general practitioner and

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

his physician since 1975. Dr. Donald testified that it was "obvious" to him that Ramos had

> had quite a blow to the head, because he had a scalp laceration that needed care and suturing and repair at that time, and he was all skinned up and his head was pretty well abraded.

Dr. Donald further testified that Ramos had

> a torn ear drum where blood is [sic] coming through from the middle ear, so you know you've got damage to the interior.

In twelve points of error, K–Mart attacks: (1) the submission of jury issues regarding Ramos' future damages; (2) the factual sufficiency of the evidence supporting the jury's award of future damages; (3) the submission of an issue on gross negligence; (4) the factual sufficiency of the evidence to support the jury's finding of gross negligence; and (5) the trial court's refusal to grant remittitur of the amount of future and exemplary damages.

In its first four points of error, K–Mart attacks the findings on future damages for physical pain and mental anguish, loss of earning capacity, home aid, and physical impairment. K–Mart urges that: (1) there was no competent evidence on which to submit these questions; (2) the trial court erred in overruling its motion for a new trial as there was insufficient evidence to support the jury's answers; and (3) the trial court abused its discretion in overruling K–Mart's request for remittitur of the future damages awarded.

The damages question and the jury's answers to it are as follows:

> What sum of money, if any, paid now in cash, would fairly and reasonably compensate Ernest Ramos for his injuries, if any, that resulted from the occurrence in question?
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element.
>
> Answer separately in dollars and cents, if any, for each of the following items:

| | | |
|---|---|---|
| (a) Physical pain and mental anguish | | |
| (1) in the past | | $150,000.00 |
| (2) in the future | | $100,000.00 |
| (b) Loss of earning capacity | | |
| (1) in the past | | $90,281.00 |
| (2) in the future | | $98,441.00 |
| (c) Medical Expenses | | |
| (1) in the past | | $50,000.00 |
| (d) Home Aid | | |
| (1) in the future | | $1,030,148.00 |
| (e) Physical impairment | | |
| (1) in the past | | $50,000.00 |
| (2) in the future | | $150,000.00 |

A statement in a point of error that "no competent evidence" supports the submission of a jury question raises a question of law. Only issues raised by the evidence are to be submitted to the jury. *Ethicon, Inc. v. Parten*, 520 S.W.2d 527, 531 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). In determining whether the evidence raised an issue for submission, the reviewing court must view the evidence and inferences therefrom in the light most favorable to the party with the burden of securing the finding, disregarding all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Ethicon, Inc.*, 520 S.W.2d at 531. If there is any probative evidence, "more than a scintilla," tending to support an issue, the trial court may not refuse to submit the issue to the jury even if there is insufficient evidence to support an affirmative finding. *Ethicon, Inc.*, 520 S.W.2d at 531.

In reviewing factual sufficiency challenges to a verdict, this Court must consider and weigh all of the evidence, and should set aside the verdict only if the evidence is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza*, 395 S.W.2d at 823. The trier of fact is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given their testimony. *Benoit v. Wilson*, 150 Tex. 273, 281, 239 S.W.2d 792, 797 (1951); *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The court of appeals is never permitted to substitute its

opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

■ K–Mart's basic contention with regard to future damages is that the evidence is insufficient to establish that Ramos' condition at the time of trial was related to the accident at the K–Mart store. Specifically, K–Mart contends that no expert medical testimony based on a "reasonable medical probability" established this causal connection. K–Mart relies on several workers' compensation cases to support this proposition.

Ramos presented the testimony of at least four experts concerning the cause, nature, and extent of his injuries. Dr. Donald, Ramos' general practitioner, testified that Ramos had suffered a severe blow to his head, that he was neurologically disabled, and that he suffered neurologic brain damage. Additionally, Dr. Donald testified that Ramos was suffering from memory loss, mood swings, and slurred speech; that he was totally disabled; and that his condition was deteriorating. Dr. Donald's medical testimony clearly supported the finding that Ramos' head injury sustained at K–Mart caused both physical and mental damage.

Dr. Francis J. Pirrozolo, Chief of the Neuropsychology Service at Baylor College of Medicine, testified that he found Ramos' condition consistent with a closed head injury, and that an injury of the sort Ramos experienced "can easily cause such profound mental deficits as those that we see in Mr. Ramos today." Dr. Jerome Brown, a neuropsychologist[2] and clinical assistant professor at Baylor College of Medicine, also diagnosed Ramos as suffering from an organic brain syndrome associated with closed head trauma and severe impairment. Drs. Brown and Pirrozolo both found Ramos' intellectual functioning to be in the mentally retarded range, and both testified that he needs custodial care and supervision on a daily basis.

Dr. Charles Banker, a large-animal veterinarian, knew Ramos before his injury and testified that Ramos was one of the top horse grooms in West Texas and New Mexico. He was, before his injury, alert, smart, and observant. Les Carter, the only horse trainer for whom Ramos worked after the accident, knew Ramos' reputation as "very, very impeccable," and that he had "worked for the best." However, after the accident, Ramos was unable to perform satisfactorily for Carter. He testified that Ramos "walked around ... like dead lice falling off of him" or "lead in his butt," not able to do anything a trainer should do.

Dr. Carl Hansen, Chairman of the Department of Special Education at the University of Texas, concurred that Ramos does not have the ability to live independently and that he requires supervision and care on a daily basis.

This expert testimony established that both Ramos' condition at the time of trial and his need for future care resulted from the occurrence in question.

Dr. Donald's medical opinion was that Ramos' head injury caused both physical and mental damage. In addition, Drs. Brown and Pirrozolo, both neuropsychologists and experts qualified under Texas law, presented testimony that related Ramos' present mental deficits to the accident at K–Mart. In speaking of expert or scientific testimony, Texas courts have consistently declined to limit the definition of "expert" to medical doctors. *Schafer v. Texas Employers' Ins. Ass'n,* 612 S.W.2d 199, 203 (Tex.1980); *Parker v. Mutual Liability Ins. Co.,* 440 S.W.2d 43, 46 (Tex.1969); *Greene v. Anders* 473 S.W.2d 622, 623 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.).

Furthermore, although Texas courts have consistently approved the test of "reasonable probability" concerning future damages for personal injuries, a plaintiff is not required to establish the future medical consequences of his injury by medical testi-

---

**2.** A neuropsychologist is a psychologist who has been trained in clinical psychology, but specializes in the administration of psychological tests to evaluate human brain disorders or psychological impairment that is caused by or related to brain tissue problems.

mony grounded solely on "reasonable *medical* probability." *Fisher v. Coastal Transp. Co.*, 149 Tex. 224, 230 S.W.2d 522, 525 (1950) (emphasis added); *Hughett v. Dwyre,* 624 S.W.2d 401, 405 (Tex.App.— Amarillo 1981, writ ref'd n.r.e.). That is, the recovery of future damages is restricted to those damages that will *reasonably and probably* result from the injury sustained; recovery is not allowed for results that may *possibly* occur in the future. *Fisher,* 149 Tex. at 224, 230 S.W.2d at 523.

The foregoing evidence, showing both the nature of Ramos' injuries resulting from the accident in question and his condition at the time of trial, was legally sufficient to support the submission of the future damages question to the jury. It was also factually sufficient to support the jury's answers.

Points of error one and two are overruled.

■ In points of error three and four, K–Mart contends the trial court abused its discretion in failing to grant a remittitur because there was no evidence and factually insufficient evidence to support the jury's award. The standard of review for refusal to grant remittitur is one of factual sufficiency. *Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641 (Tex.1987); *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.1986). The reviewing court must examine all of the evidence in the record to determine whether sufficient evidence supports the damage award. *Pope,* 711 S.W.2d at 624.

■ Dr. Charles Hawkins, head of the Economics and Finance Department at Lamar University, calculated Ramos' lost future earnings at $98,441, the precise amount awarded by the jury. Dr. Hawkins also testified concerning the amount necessary for the home aid described by Drs. Donald, Pirozzolo, Brown and Hansen. The jury returned an award for home aid in the amount of $1,030,148, the lower middle range figure calculated by Dr. Hawkins. Having considered the economic evidence from Dr. Hawkins, and the medical testimony from Drs. Donald, Pirozzolo, Brown, and Hansen, we find this evidence is suffi-

cient to support the jury's award, and that there is no basis for granting a remittitur.

Points of error three and four are overruled.

In its fifth, sixth, seventh, and eighth points of error, K–Mart attacks the answers to question three, the gross negligence issue, on three grounds. K–Mart contends: (1) the evidence was legally insufficient to support the submission of gross negligence to the jury; (2) the trial court erred in overruling K–Mart's motion for a new trial, as there was insufficient evidence to support the jury's answer; and (3) the trial court abused its discretion in overruling K–Mart's request for remittitur in the amount of exemplary damages awarded, because the evidence was insufficient to sustain the jury's answer.

Question three and the jury's answer read:

Was the negligence of K–Mart gross negligence?

Answer "Yes" or "No."

Answer: Yes

"Gross Negligence" means an entire want of care or such a slight degree of care such as would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights, safety, or welfare of Ernest Ramos.

■ In determining whether evidence supports the submission of an issue on gross negligence, this Court must view the evidence and inferences therefrom in the light most favorable to the party with the burden of securing the finding, disregarding all evidence and inferences to the contrary. *Ethicon, Inc.,* 520 S.W.2d at 531. In other words, the trial court could not refuse to submit an issue on gross negligence if there was some evidence of K–Mart's entire want of care. *Id.*

■ Ramos had the burden at trial to show that K–Mart was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981). There was evidence admitted that showed K–Mart: (1) knew the gate tended to fall

off its track; (2) knew the gate would fall and hit the ground if it was off track; (3) knew the defective steel gate, weighing approximately 100 pounds, created a dangerous situation; (4) received actual knowledge of the gate's defect long before the accident involving Mr. Ramos; (5) had the ability to warn invitees not to use this customer loading area because of the problem with the gate; and (6) at times, parked a forklift in front of the gate to prevent the gate from hitting the ground if it came off track. The foregoing evidence is sufficient to support the jury's finding that K–Mart knew about the danger and demonstrated by its conduct that it did not care. *Burk Royalty Co.*, 616 S.W.2d at 922. There was some evidence, i.e., legally sufficient evidence, to support the submission of gross negligence to the jury.

▮▮▮▮ In testing the sufficiency of the evidence to determine if the jury's finding of gross negligence was against the great weight and preponderance of the evidence, this Court must consider and weigh all the evidence. *Cain*, 709 S.W.2d at 176; *Garza*, 395 S.W.2d at 823. K–Mart presented evidence that Joe Cunningham, the general store manager, did not know there was a problem with the gate until after Mr. Ramos' accident, and that the operations manager, the person in charge of repairs at the store, was normally prompt and attentive in making sure everything was fixed. On the other hand, Ramos presented testimony of two employees, one a salesman and the other an area manager, that managers knew the gate would fall down, and that nothing was done to correct this dangerous condition. The jury's finding of K–Mart's gross negligence is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

K–Mart's fifth, sixth, seventh, and eighth points are overruled.

In its ninth, tenth, eleventh, and twelfth points of error, K–Mart contends that the amount of exemplary damages awarded by the jury was excessive and, therefore, violated K–Mart's constitutional guarantee of due process.

▮▮▮▮ The determination of an amount to award as exemplary damages is dependent upon the facts of each case. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Exemplary damages must be reasonably proportioned to actual damages; however, there is no set ratio between the amounts of actual and exemplary damages that is considered reasonable. *Id.* When reviewing an award of exemplary damages to determine its reasonableness, the reviewing court must consider a number of factors, including: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo Nat'l Bank*, 616 S.W.2d at 910. Additionally, the net worth of the defendant is relevant to the amount of exemplary damages that may be awarded in a particular case. *Lunsford v. Morris*, 746 S.W.2d 471, 472 (Tex.1988).

▮▮▮▮ The reviewing court is first required to look at the ratio between actual and exemplary damages to determine if the award is the result of jury passion or bias. Here, the jury awarded Ramos $1.8 million in actual damages. The exemplary award of $2.2 million is slightly larger than a ratio of one to one (more precisely, 1.22 to one). Based upon this ratio, it cannot be said the award was a result of passion or bias. *Southwestern Bell Tel. Co. v. Bakes*, 650 S.W.2d 467, 472 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (verdict awarding exemplary damages of $250,000 in face of actual damage award of $241,585 held "conclusive" and not grossly excessive).

Further, the jury heard testimony that the gate had a tendency to fall off the track, that the wind would knock it over, and that this happened so frequently that a forklift was sometimes parked in front of the gate to prevent it from falling all the way to the ground. Additionally, there was testimony that this problem was reported to management, and that management took no action to repair the gate or to

protect the safety of the customers who passed within it.

■ Because exemplary damages are awarded both to punish the defendant and to set an example that will deter the defendant and others from engaging in the proscribed conduct, the net worth of the defendant is relevant in making this award. *Lunsford*, 746 S.W.2d at 473. Given K–Mart's size ($27 billion in sales in 1988), its net after-tax income ($803 million in 1988), and its net worth (more than $5 billion in 1988), we cannot say that the jury's award of $2,200,000 in exemplary damages is excessive.

The evidence is sufficient to support the jury's award of exemplary damages, and the trial court did not err in failing to grant a remittitur of such damages.

■ K–Mart's last contention regarding the amount of exemplary damages is a due process and excessive fines argument. Specifically, K–Mart states that the jury was given no guidance either on how to evaluate K–Mart's conduct or on how to assess exemplary damages, and that the arbitrary and uncontrolled outcome was the antithesis of due process. In support of this proposition, K–Mart relies on *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), and an anticipated ruling favorable to its position in the now decided *Pacific Mut. Life Ins. Co. v. Haslip*, —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

In *Browning–Ferris*, the Supreme Court specifically stated the excessive fines clause of the eighth amendment does not apply to awards of exemplary damages in cases between private litigants, *Browning–Ferris Indus.*, 109 S.Ct. at 2914, but reserved for future decision the question of whether "due process acts as a check on undue jury discretion to award punitive damages in the absence of any express statutory limit." *Id.* at 2921. In *Haslip*, the Supreme Court held the common-law method for assessing punitive damages awards does not offend the due process clause, which requires only that defendants be protected from arbitrary and excessive verdicts through jury instructions and meaningful judicial review.

Here, the trial court's instruction did not give the jury unlimited discretion in determining punitive damages. The jury was instructed that:

"Exemplary Damages" means an amount which you may, in your discretion, award as an example to others and as a penalty by way of punishment to K–Mart, in addition to any amount which may have been found by you as actual damages. You may consider K–Mart's net worth in determining what amount, if any, would constitute a penalty to K–Mart.

Further, this Court has reviewed the award and found it to be reasonable.

We cannot say that the exemplary damage award violated K–Mart's constitutional guarantee to due process of law. K–Mart's eleventh and twelfth points are without merit.

K–Mart's ninth, tenth, eleventh, and twelfth points of error are overruled.

The judgment of the trial court is affirmed.