Opinion issued November 21, 2002











In The
Court of Appeals
For The
First District of Texas




NO. 01-00-00788-CV




RUSSELL G. THATCHER, Appellant

V.

AMANDA YARBOROUGH, Appellee




On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 97-02965 




O P I N I O N

          This is a premises liability case between a landlord and a tenant. The landlord,
Russell G. Thatcher, is appealing an adverse jury verdict in favor of the tenant,
Amanda Yarborough, for injuries she suffered to her back as a result of falling on the
backdoor steps of her rent house. The jury awarded appellee $164,756.00 for her
injuries.
          In four points of error, appellant contends that chapter 92 of the property code
bars appellee’s common law personal injury claim and that the evidence is legally and
factually insufficient to support the jury’s finding on liability and damages. We
affirm the judgment.
‒        The Evidence
          The undisputed evidence established that from August 1995 until January
1997, appellee rented a house from appellant as her primary residence. Appellee
testified that over a short period of time, the house deteriorated to the point where she
could no longer open the front door. Apparently, the house’s frame had shifted
significantly and the front door was literally impossible to open. As a result, appellee
was forced to use the backdoor of the house as her only means of entrance. 
According to her testimony, the steps leading up to the backdoor of the house were
very unstable and dangerous to use. She testified that a board on the bottom of the
steps was loose and that it shifted when she walked on it. 
          As proof of the condition of the steps, appellee introduced into evidence a
videotape and four pictures which depicted the condition of the steps. The videotape
also showed how the front door of the house could not be opened from either side. 
          After the jury viewed the videotape, appellee testified that she informed
appellant’s father, Russell S. Thatcher, that the steps needed immediate repairs.


 On
the same day, appellant’s father went to the house to take a look at the problem. In
an attempt to repair what he called an “emergency,” he placed two bricks under the
steps for support. According to appellee, his “emergency” repairs actually made the
steps worse, not better. 
          Almost three weeks after the “emergency” repairs, while appellee was walking
down the steps, the board shifted beneath her and she fell on her back. Immediately,
she began experiencing severe pain in her lower back. She testified that for several
months she did nothing but lie on the couch because the pain in her back limited her
mobility. 
          Ultimately, appellee was taken to the emergency room to have her back
examined. Approximately a month later, she had surgery to fix what was diagnosed
as a herniated disk.



          In addition, appellee testified that she continues to experience severe pain in
her back on a daily basis. She testified that she has experienced a significant loss of
strength in her right leg, which ultimately caused her to fall several times since her
surgery. She testified that a year after her fall, she twisted her back while shopping
at a Kroger’s grocery store. She also told the jury that she fell yet again after her right
leg buckled underneath her while she was walking in her backyard. 
          During appellant’s father’s testimony, he corroborated the majority, if not all,
of appellee’s testimony. He stated that he was responsible for making repairs to the
house where appellee fell. He also admitted that he was aware that the steps behind
appellee’s house were in need of repair. When asked to characterize the condition of
the steps and also his actions, appellant’s father testified as follows:
          Q.      And the steps, I believe your attorney may have called it an emergency
repair. Would you characterize it as an emergency repair?
 
          A.      Well, definitely it would be an emergency, yes.
 
          Q.      It would be an emergency? Why is that, sir?
 
          A.      Well, someone - -
 
          Q.      Could have gotten hurt?
 
          A.      Could possibly slip and fall.
 
          Q.      Sure. Okay. And you put some bricks underneath the bottom step. 
Right?
          A.      That’s right.
 
          Q.      You intended to come back and finish the repairs at a later time. True?
 
          A.      Yes.
 
          Q.      You never finished the repairs while my clients were living in the
house. Isn’t that true?
 
          A.      No. I came back.
 
          Q.      Right.
 
          A.      But I didn’t finish it.
 
          Q.      Okay. And of course, sir, you would admit that in putting the bricks
under the bottom step it was an emergency repair. You would agree
that to say repairs were not done in a workmanlike manner. Isn’t
that true sir?
 
          A.      No. That’s right.
 
          Q.      That is correct?
 
          A.      That’s right.
 
          Q.      Okay. And then after my clients moved out you replaced the steps in
their entirety. Isn’t that true?
 
          A.      True.

          Appellant testified, in pertinent part, as follows:
          Q.      . . . Would you agree with me that a landlord has a duty to maintain a
safe premises for his tenants?
 
          A.      Yes.
 
          Q.      And that was something you entrusted your father to do?
 
          A.      Him and me. If he needed help he would call upon me.

          . . . .
 
          Q.      Do you agree with your father’s characterization that there were
emergency repairs done in an unworkmanlike manner?
 
          A.      Yes. I wasn’t there to directly witness the event.

          . . . .
 
          Q.      But at least to some extent you knew that the steps needed some
repair?
 
          A.      Yes. I was aware - - I’d been made aware of the problem.

          . . . .
 
          Q.      We just heard his testimony that those steps were not repaired in a
workmanlike manner?
 
          A.      The first time, no. The second - - well, he didn’t say - - I don’t
remember him saying one way or the other.
 
          Q.      That’s right. He did. Didn’t replace the steps a week later, did you? 
 
          A.      No.
 
          Q.      Didn’t replace the steps a month later. Correct?
 
          A.      No.
 
          Q.      Would a month’s worth of time be enough time for y’all to get some
tools, replace the steps? Would that be enough time?
          A.      Yes. I would think so.

          . . . .
 
          Q.      . . . And ultimately after the Yarboroughs moved out, y’all replaced the
steps altogether?
                          
          A.      Yes.

          . . . .
 
          Q.      . . . So replacing the steps originally, I guess, would have been a good
idea?
 
          A.      Yes. Based on what’s happened, it would have been a better course of
action.
 
(Emphasis added.)

          Next, Dr. Mool Nigam, a specialist in neurology, testified by deposition as an
expert. He testified that he first saw appellee on December 18, 1996 when he
performed a physical examination on her. He stated that appellee told him that she
had fallen approximately six weeks prior to her visit and she was experiencing some
pain in her lower back. Dr. Nigam performed an MRI on appellee and the MRI
showed evidence of a herniated disk. He immediately referred her to Dr. Edward
Murphy, a neurosurgeon, who performed a laminectomy on appellee in order to help
relieve some of her pain. 
          According to Dr. Nigam, the initial fall and subsequent surgery left appellee’s
back in a vulnerable state, prone to reinjury. Further, Dr. Nigam testified that
appellee continues to come to his office with complaints of pain. He testified that in
his opinion, based upon a reasonable degree of medical probability, appellee’s fall at
the backdoor steps caused the herniated disk. Dr. Nigam stated that in all likelihood,
appellee would live with pain for the rest of her life. He stated that appellee would
simply have to suffer and put up with the pain.
          Finally, pursuant to section 18.001 of the Civil Practice and Remedies Code,
appellee introduced into evidence, without objection, her past medical bills


 of
$18,067. Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (Vernon 1997). The
individual totals from each medical facility or doctor were as follows:
          1.       Columbia Bayshore Medical Center    $8,980.00 
          2.       Dr. Leventhal                                       $ 657.35 
          3.       Dr. Murphy                                         $4,560.00 
          4.       Dr. Nigam                                            $1,570.00 
          5.       Dr. Pakzaban                                        $ 650.00 
          6.       River Oaks Imaging                            $1,519.00 
          7.       Dr. Andrew                                          $ 130.93 
                                                                                  $18,067.28

 
 
CHAPTER 92 OF THE PROPERTY CODE
          In connection with his first point of error, appellant agues that under chapter
92 of the property code, he did not owe appellee a duty to repair the steps because she
failed to provide him with “subsequent written notice” of the problem as required by
section 92.056(b)(3) of the property code. Tex. Prop. Code Ann. § 92.056(b)(3)
(Vernon 2001). However, the evidence establishes that appellant had actual notice
of the defect in the steps, and appellant was aware that the “emergency repair” was
inadequate to correct the defect. Even if chapter 92 applies to this case, no
“subsequent written notice” from appellee was necessary.



          We overrule appellant’s first argument regarding chapter 92.
LEGAL AND FACTUAL SUFFICIENCY
          Additionally, in his first three points of error, appellant contends that the
evidence was legally and factually insufficient to support the jury’s finding on
liability and damages. 
‒        Standard of Review
          When, as here, a party without the burden of proof challenges the sufficiency
of the evidence, we will sustain the legal sufficiency challenge only if, considering
the evidence and inferences in the light most favorable to the finding, there is no more
than a scintilla of evidence supporting it. Minnesota Mining & Mfg. Co. v. Nishika
Ltd., 953 S.W.2d 733, 738 (Tex. 1997); Sherman v. First Nat’l Bank, 760 S.W.2d
240, 242 (Tex. 1988). 
          If there is some evidence supporting a finding, we then conduct a factual
sufficiency review. We will sustain a factual sufficiency challenge only if, after
viewing all the evidence, the evidence is so weak or the verdict so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).
          Also, as we examine the evidence, we remain mindful that the jury is the sole
judge of a witness’s credibility and the weight to be given the testimony. See Neese
v. Dietz, 845 S.W.2d 311, 313 (Tex. App.—Houston [1st Dist.] 1992, writ denied). 
The jury may accept or reject the testimony of any witness in whole or in part. Id. 
An appellate court cannot substitute its opinion for that of the jury. Id. at 314-15.
          Moreover, when reviewing legal and factual sufficiency complaints, “it is the
court’s charge, not some other unidentified law, that measures the sufficiency of the
evidence when the opposing party fails to object to the charge.” Osterberg v. Peca,
12 S.W.3d 31, 55 (Tex. 2000); see also City of Fort Worth v. Zimlich, 29 S.W.3d 62,
71 (Tex. 2000) (holding that when no objection was made to jury instruction,
evidence to support finding based on instruction should be assessed “in light of” the
instruction given); Larson v. Cook Consultants, Inc., 690 S.W.2d 567, 568 (Tex.
1985) (same). Therefore, we will evaluate appellant’s sufficiency challenges based
solely on the charge given to the jury.
          Elements of Premises Liability
          Although appellee pled a number of different causes of action, including
negligence, gross negligence, negligence per se, and breach of contract, the evidence
presented at trial and the charge to the jury was consistent with a premises-liability
case. To succeed in a premises-liability suit, a plaintiff must prove the following: 1)
the defendant had actual or constructive knowledge of some condition on the
premises, 2) the condition posed an unreasonable risk of harm, 3) the defendant did
not exercise reasonable care to reduce or eliminate the risk, and 4) the defendant’s
failure to use reasonable care proximately caused the plaintiff’s injuries. Wal-Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998); State Dep’t. of Highways
& Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992).
          The Charge
          In this case, the jury charge tracked the elements listed above and included the
following jury questions and relevant instructions (the jury’s answers to the questions
are underlined):

Question No. 1

          Did the negligence, if any, of those named below proximately cause the
occurrence in question?

          With respect to the condition of the premises, Russell G. Thatcher was
negligent if - 
 
          a.       The condition posed an unreasonable risk of harm, and
 
b. Russell G. Thatcher knew or reasonably should have known of
the danger, and
 
c. Russell G. Thatcher failed to exercise ordinary care to protect
Amanda Yarborough from danger, by both failing to adequately
warn Amanda Yarborough of the condition and failing to make
that condition reasonably safe.

          “Negligence,” with respect to the conduct of Amanda Yarborough, means
failure to use ordinary care, that is, failing to do that which a person of ordinary
prudence would have done under the same or similar circumstances, or doing that
which a person of ordinary prudence would not have done under the same or similar
circumstances.

          “Ordinary care” means that degree of care that would be used by a person or
entity of ordinary prudence under the same or similar circumstances.

          “Proximate cause” means that cause which, in a natural and continuous
sequence, produces an event, and without which cause such event would not have
occurred. In order to be a proximate cause, the act or omission complained of must
be such that a person or entity using ordinary care would have foreseen that the event,
or some similar event, might reasonably result therefrom. There may be more than
one proximate cause of an event.

          Answer “Yes” or “No” for each of the following:
 
                    a.       Russell G. Thatcher          Yes 
                    b.       Amanda Yarborough        Yes 

Question No. 2
          What percentage of the negligence that caused the occurrence do you find to
be attributable to each of those found by you, in your answer to Question No. 1, to
have been negligent?

          The percentages you find must total 100 percent. The negligence attributable
to those named below is not necessarily measured by the number of acts or omissions
found.
 
Answer by stating a percentage.
 
          a.       Russell G. Thatcher          80 %
          b.       Amanda Yarborough        20 %

Question No. 3
          What sum of money, if paid now in cash, would fairly and reasonably
compensate Amanda Yarborough for her damages, if any, resulting from the
occurrence in question?

          Consider the elements of damages listed below and none other. Consider each
element separately. Do not include damages for one element in any other element. 
Do not include any amount for any condition existing before the occurrence in
question, except to the extent, if any, that such other condition was aggravated by any
injuries that resulted from the occurrence in question. Do not include any amount for
any condition not resulting from the occurrence in question. Do not include interest
on any amount of damages you find. Do not reduce the amounts, if any, in your
answers because of the negligence, if any, of Amanda Yarborough.

          Answer in dollars and cents, for damages, if any, that
 
                                                                        were sustained       will be sustained 
                                                                          in the past            in the future 
 
a.       Physical pain and mental anguish        $12,500.00            $75,000.00
b.       Physical impairment                            $ 0.0             $50,000.00
c.       Medical expenses                                 $18,067.28
Analysis Regarding Liability
          As to liability, the evidence shows that appellant was actually aware of the
dangerous condition of the steps and failed to act to reduce or eliminate it. He
testified that his father told him that the stairs were in need of repair and he admitted
that the repairs made by his father were done in an unworkmanlike manner. He also
stated that a better course of action would have been to replace the steps in a timely
fashion. In essence, appellant and his father admitted that the “emergency” repairs
failed to make the dangerous condition of the steps safe. Therefore, the first three
elements of appellee’s premise liability cause of action were satisfied by appellant’s
own testimony. Gonzalez, 968 S.W.2d at 936; Payne, 838 S.W.2d at 237.
          The last element of appellee’s cause of action is proximate cause. The question
of proximate cause generally involves a practical inquiry based on common
experience applied to human conduct. Doe v. Boys Clubs of Greater Dallas, Inc., 907
S.W.2d 472, 478 (Tex. 1995). The two elements of proximate cause are cause-in-fact
and foreseeability. Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 549 (Tex.
1985). Cause-in-fact means the negligent act or omission was a substantial factor in
bringing about the injury, and without which no harm would have occurred. Id. 
Foreseeability requires that a person of ordinary intelligence should have anticipated
the danger created by a negligent act or omission. Id. at 549-50. The danger of
injury is foreseeable if its general character might reasonably have been anticipated. 
Id. at 551. It asks whether the injury “might reasonably have been contemplated” as
a result of the defendant’s conduct. McClure v. Allied Stores of Tex., Inc., 608
S.W.2d 901, 903 (Tex. 1980); see also Lenger v. Physician’s Gen. Hosp., Inc., 455
S.W.2d 703, 706 (Tex. 1970) (holding that absolute certainty is not required to prove
causation; plaintiff only needs to establish reasonable probability that his injuries
were caused by defendant’s conduct).
          In this case, to establish cause-in-fact, appellee relied on her own testimony and
the expert testimony of her neurologist, Dr. Nigam. As discussed above, appellee
testified that after she fell on the steps, her back began to experience severe pain. Dr.
Nigam testified that based upon a reasonable degree of medical probability,
appellee’s fall at her backdoor steps caused her herniated disk. As for foreseeability,
it is undisputed that appellant was aware the steps were in need of repair and were
dangerous. We conclude that this uncontroverted evidence was both legally and
factually sufficient to support a finding of proximate cause.
 
 
‒        Analysis Regarding Damages
          Finally, appellant challenges the amount of damages the jury awarded appellee. 
With respect to appellee’s damages, appellant maintains that the evidence was legally
and factually insufficient to support the jury’s award of $75,000 for future pain,
$50,000 for future impairment, $12,500 for past pain and mental anguish, and
$18,067 for past medical bills.
                    Past Medical Bills
          First, in order to recover medical expenses, a claimant must prove the charges
incurred were “reasonable and necessary.” Nat’l Union Fire Ins. Co. v. Wyar, 821
S.W.2d 291, 297 (Tex. App.—Houston [1st Dist.] 1991, no writ). An affidavit may
serve as “sufficient evidence to support a finding of fact by judge or jury that the
amount charged was reasonable and necessary.” Id. at 297 (citing Tex. Civ. Prac.
& Rem. Code Ann. § 18.001(b) (Vernon Supp. 1991)). Moreover, hospital bills
introduced into evidence are sufficient to support an award of past medical expenses. 
Id. (citing Six Flags Over Texas, Inc. v. Parker, 759 S.W.2d 758, 761 (Tex.
App.—Fort Worth 1988, no writ)). In this case, as we specifically discussed above, appellee introduced into
evidence her medical bills and also uncontroverted affidavits that stated the medical
expenses were reasonable and necessary. Thus, we hold that the evidence was legally
and factually sufficient to support the jury’s finding of past medical expenses of
$18,067. Id. (holding evidence was legally and factually sufficient to justify jury
award of past medical bills when claimant introduced into evidence medical bills and
uncontroverted affidavits that state expenses were reasonable and necessary). 
                    Physical Pain, Impairment, and Mental Anguish
          As a general rule, an award of future damages in a personal injury case is
always speculative. Pipgras v. Hart, 832 S.W.2d 360, 365 (Tex. App.—Fort Worth
1992, writ denied). Matters of pain and suffering are necessarily speculative, and it
is within the province of the jury to set the amount of such damages. Hicks v.
Ricardo, 834 S.W.2d 587, 591 (Tex. App.—Houston [1st Dist.] 1992, no writ). We
give a jury’s determination of the amount of damages a great deal of discretion. Id.
(citing Green v. Meadows, 527 S.W.2d 496, 499 (Tex. Civ. App.—Houston [1st
Dist.] 1975, writ ref’d n.r.e.)). 
          In this case, throughout the trial, both appellee and Dr. Nigam testified in detail
about the amount of pain appellee was experiencing on a daily basis. Dr. Nigam
testified that appellee would continue to suffer pain in her back for the rest of her life. 
Appellee introduced approximately 100 pages of medical records that detail her
symptoms of pain as well as the painful medical procedures she endured to repair her
back. Appellee testified that she has a hard time taking care of her children on a daily
basis. According to her testimony, this causes her a great deal of stress. She also has
a hard time performing tasks such as cleaning the kitchen floor and pulling weeds in
her front yard. Moreover, appellee is forced to walk with a cane and needs a
handicap permit for her vehicle in order to travel. After considering and weighing all
the evidence, we cannot say that the evidence supporting the jury’s award of past and
future pain, physical impairment, and mental anguish damages is so weak as to be
clearly wrong and unjust.
          We overrule appellant’s first, second, and third points of error.
          Remittitur 
          In his fourth point of error, appellant contends that this Court should order a
remittitur of the damage award. “In determining whether damages are excessive, trial
courts and courts of appeals should employ the same test as for any factual
insufficiency question.” Pope v. Moore, 711 S.W.2d 622, 624 (Tex. 1986); accord
Larson v. Cactus Utility Co., 730 S.W.2d 640, 641 (Tex. 1987) (holding factual
sufficiency is sole remittitur standard for actual damages); Darby v. Jefferson Life Ins.
Co., 998 S.W.2d 622, 629 (Tex. App.—Houston [1st Dist.] 1995, no writ) (same);
K-Mart Corp. v. Pearson on Behalf of Ramos, 818 S.W.2d 410, 415 (Tex.
App.—Houston [1st Dist.] 1991, no writ) (same). 
          In light of our disposition of appellant’s first three points of error, where we
held that the evidence was legally and factually sufficient to support the jury’s award
of damages, we find nothing new in this point of error that would merit this Court to
order a remittitur. 
          Appellant’s fourth point of error is overruled.
          Appellee’s Cross-Appeal
          Appellee brought one cross-point on appeal for our consideration. However,
appellee requested that we only consider the cross-point if we reverse judgment
against appellant. In light of our disposition of appellant’s points of error, we need
not address appellee’s sole cross-point in this appeal.
          Motion For Sanctions
          Appellee requests us to assess sanctions against appellant and/or his counsel
on the basis that appellant’s appeal is frivolous. See Tex. R. App. P. 45. Under Rule
45, we may award joint damages if we objectively determine, after considering “the
record, briefs, or other papers filed in the court of appeals,” an appeal is frivolous. 
Smith v. Brown, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied). We consider the record from the viewpoint of the appellate advocate to
decide whether he had reasonable grounds to believe the case could be reversed. Id. 
          Though we disagree with the merits of appellant’s appeal, we find no basis for
concluding that appellant had no reasonable grounds to believe the case could be
reversed.
          We overrule appellee’s motion for sanctions.
CONCLUSION
          We affirm the judgment.




                                                                        Margaret Garner Mirabal
                                                                        Justice

Panel consists of Justices Mirabal, Nuchia, and Price.



Do not publish. Tex. R. App. P. 47.4.