610 A.2d 295

**MARKET TAVERN, INC.**

v.

**Daniel M. BOWEN.**

**No. 1345 Sept. Term, 1991.**

Court of Special Appeals of Maryland.

May 11, 1992.

Reconsideration Denied June 30, 1992.

624

626

George W. Liebmann, Baltimore, for appellant.

Barry C. Steel, Towson, for appellee.

Argued before MOYLAN, CATHELL and MOTZ, JJ.

MOTZ, Judge.

The principal questions raised in this case concern the constitutionality and propriety of a punitive damages award. Because we believe that there was no error in that award or in any of the rulings of the court below, we affirm the judgment of the Circuit Court for Baltimore City (Prevas, J.).

## I. *Facts and Proceedings Below*

The incident which gave rise to this action occurred on February 8, 1987. Appellee, Daniel M. Bowen ("Bowen"), then a senior at Lansdowne High School, was driven by some friends, as a delayed birthday present, to Hammerjacks, a large Baltimore bar owned and operated by appellant, Market Tavern, Inc. Hammerjacks is located in a building that was once a former industrial warehouse; it contains 14 bars with 28 bartenders, who serve at least 10,000 patrons a week in a facility capable of accommodating at least 1,600 people at any one time.

Hammerjacks security personnel are expected to exhibit a conspicuous presence so as to deter disturbances among the patrons. Although security employees are not permitted to hit or kick anyone, they are, depending upon the situation, authorized to grab boisterous patrons, to separate those involved in altercations and, if necessary, to eject those patrons from the premises. An ejection may involve security personnel bodily removing someone from the premises— action which they were authorized by Hammerjacks management to perform. At the time of this incident, there was evidence that security personnel wore distinctive black

jackets with gold lettering saying "Hammerjacks Security." Although there was testimony that these jackets were also worn by others, Louis J. Principio, III, the President of Market Tavern, testified that Hammerjacks did not countenance the wearing of Hammerjacks Security jackets in the bar by anyone other than security personnel. Principio was aware of no occasion when someone other than a Hammerjacks employee wore one inside the premises of the bar.

After entering Hammerjacks, Bowen was treated by his friends to a "kamikaze shooter"—a potent concoction of vodka, tequila, and triple sec. Bowen, who was already somewhat inebriated and who had never before consumed hard liquor, became more inebriated after consuming at least three of these drinks. At that point, Bowen's friends left for other parts of Hammerjacks. Bowen remained where he was, and found a wall to lean against because by that time he was not certain if he could stand up on his own. Bowen did not remember many details after that, but did recall that he reached out and touched the hair of a passing female patron. "Someone" came up to him after that action and told him not to do it again. Unfortunately, Bowen did do it again. He was then "knocked on the ground" and "beaten on and kicked on." He could not see who had beaten him but did see that the two men who carried him out of the bar were dressed in Hammerjacks black and gold security jackets.

A highschool classmate of Bowen's, Deborah Szarko, who had frequented the bar enough times to know the head of Hammerjacks security and several Hammerjacks security personnel by name, was present at Hammerjacks that night. She witnessed the confrontation involving Bowen. Szarko identified the individuals who beat and kicked Bowen as Hammerjacks security personnel who were wearing "Hammerjacks Security" jackets. In fact, Ms. Szarko identified one of them by name as "Ed" or "Eddie." She also testified that the Hammerjacks general manager and securi-

ty manager, Thomas Perry, was standing about 10 feet away when the incident occurred.

Soon after Bowen was deposited in the parking lot, one of his friends who had arrived at Hammerjacks with him came outside. The friend took Bowen to Saint Agnes Hospital where Bowen remained for several days. He had surgery to repair a broken jaw and was discharged on February 12.

Bowen reported the incident to Baltimore City police on February 11. After questioning Bowen and several witnesses, including Szarko, two police officers went to Hammerjacks on February 12, to inquire about two bouncers named "Sam" and "Ed" who, they had been told, might have been involved in the incident. The police officers testified that a Hammerjacks representative (Thomas Perry and/or Louis Principio) said that Edward Lloyd and Samuel Clemmons, who were employed as security personnel by Hammerjacks, were the "probable two people." One officer further testified that Perry or Principio "may have said" that Lloyd and Clemmons "were going to be fired"; the other officer testified that Principio said that "if somebody would kick somebody, they would be fired."

Principio, the President of Market Tavern, testified that he knew nothing about the incident and had not told the police that he was going to fire Lloyd or Clemmons. Hammerjacks employment records, however, showed that on the night of the incident, February 8, 1987, Edward Lloyd and Samuel Clemmons worked as security personnel and Thomas Perry worked as security manager. The employment records further indicated that both Lloyd and Clemmons were terminated on February 11, 1987. Principio testified that these terminations had no relation to the incident, although he stated he did not know precisely why these employees were terminated. Perry, Market Tavern's general manager at the time of the incident, did not testify.

Dr. John Mitcherling, an expert in dentistry and oral and maxillofacial surgery who treated Bowen from the time of Bowen's arrival in the hospital emergency room, testified as

to Bowen's injuries and treatment. Dr. Mitcherling stated the nature of the fracture indicated that a "very severe blow" had caused Bowen's injury. Dr. Mitcherling described the surgery to repair Bowen's jaw, which also necessitated the jaw being wired shut until March 19, 1987, about six weeks after the incident. Bowen then underwent additional surgery to remove the wires, during which time four molars also were removed. Although the jaw healed properly, a wire was deliberately left after surgery which Dr. Mitcherling said is "normally not to be removed." Dr. Mitcherling testified that Bowen's teeth remain very sensitive to cold, which would be a permanent condition, and that Bowen was left with a permanent surgical scar on his jaw. Dr. Mitcherling confirmed the various bills and invoices that accompanied Bowen's surgery and treatment. He stated these charges were fair and reasonable, and all of Bowen's medical bills were admitted into evidence without objection.

Bowen testified he was unable to resume his regular activities for about three months after the incident. He had enlisted in the Marines and was worried about whether the Marines would still take him. During the time that Bowen's jaw was wired shut, he had to carry wire cutters with him at all times to cut the jaw wires should there ever be an incident where he would have to vomit, so that he would not "choke on my own vomit and die." Bowen stated that even to date his jaw sometimes hurts and his teeth are sensitive to hot and cold liquids.

At the conclusion of the plaintiff's case, Market Tavern moved for dismissal, contending there was insufficient evidence to show that the individuals who assaulted Bowen were Hammerjacks employees, or that they were acting in the scope of their employment. The motion was granted as to the negligence count, but denied as to the sole remaining count, alleging battery. Market Tavern put on no defense; it called no witnesses on its behalf. It did again move for judgment, which was denied.

After deliberation, the jury awarded Bowen $150,655.25 in compensatory damages (including $10,655.25 for past

medical expenses) and $150,000.00 in punitive damages. Further facts will be set forth within as necessary.

On appeal, Market Tavern raises a host of issues. For the sake of clarity, we have reorganized, consolidated, and simplified those issues as follows:

1. The award of punitive damages was unconstitutional and otherwise improper.
2. Prior to trial, the trial court erred in denying Market Tavern's motion for continuance, in refusing to permit Market Tavern's "corporate counsel the right to examine witnesses," and in denying Market Tavern's motion in limine.
3. The trial court erred in denying a motion for new trial on the basis of newly discovered evidence.
4. There was insufficient evidence to prove that any battery was committed by Market Tavern employees or that Market Tavern employees acted within the scope of their employment in committing any battery.
5. There was insufficient evidence to justify the award of compensatory damages.

## II. *Punitive Damages*

Market Tavern's principal challenge is to the constitutionality and legality of the jury's $150,000 punitive damages award.

### A. Due Process

Market Tavern first asserts that "[t]he jury was given no guidance as to how to determine the amount of punitive damages" and the circuit court's post-trial review of the award was inadequate. The company claims that these defects require reversal under the standards set forth in *Pacific Mut. Life Ins. Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), and *Alexander v. Evander,* 88 Md.App. 672, 596 A.2d 687 (1991).

In determining whether a punitive damages award violated the Due Process Clause, the Supreme Court in *Haslip*

focused on three aspects of the award: 1) the instructions given to guide the jury in determining whether and how much to award, 2) judicial oversight or review of the award, and 3) the amount of the award. *Haslip, supra,* 111 S.Ct. at 1044–46. The Court found the instructions before it, which set forth the purpose of punitive damages, identified the damages as punishment for civil wrongdoing, and explained that their imposition was not compulsory, satisfied due process because they placed "reasonable constraints" on the jury's discretion.[1] The *Haslip* Court further held that a state procedure which required a trial court to state on the record "the reasons for interfering with a jury verdict, or refusing to do so," satisfied due process because it ensured "meaningful and adequate review" of a jury award of punitive damages. *Id.* at 1044. Similarly, the Court concluded that state appellate review, which must consider specific factors, satisfied due process because it "makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Id.* at 1054. Finally, the *Haslip* Court upheld the actual amount of the

---

1. The punitive damages jury instruction given by the trial court in *Haslip* stated, in relevant part:

 Now, if you find that fraud was perpetrated then in addition to compensatory damages you may in your discretion ... award an amount of money known as punitive damages.

 This amount of money is awarded to the plaintiff but it is not to compensate the plaintiff for any injury. It is to punish the defendant. Punitive means to punish or it is also called exemplary damages, which means to make an example.

 \* \* \* \* \* \*

 Now, the purpose of awarding punitive or exemplary damages is to allow money recovery to the plaintiffs, it does to the plaintiff, by way of punishment to the defendant and for the added purpose of protecting the public by detering [sic] the defendant and others from doing such wrong in the future.

 \* \* \* \* \* \*

 Should you award punitive damages, in fixing the amount, you must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong.

 *Haslip, supra,* 111 S.Ct. at 1037 n. 1.

award, $840,000, which was in excess of four times the amount of compensatory damages, concluding that "the award here did not lack objective criteria." *Id.* at 1046.

In *Alexander v. Evander*, 88 Md.App. 672, 596 A.2d 687 (1991), Chief Judge Wilner, writing for this court, considered Maryland law on punitive damages in light of the guidelines set forth in *Haslip*. First, Chief Judge Wilner outlined a list of principles, articulated by the Court of Appeals over the years "that are similar to and serve the same purpose" as the standards set forth in *Haslip*. *Id.* at 715, 596 A.2d 687. He stated that punitive damages in Maryland:

(1) may be imposed only where there is "outrageous conduct";

(2) may be awarded only upon a showing of "actual malice" on the part of the defendant, i.e., "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff" or, in certain kinds of cases, subject to further refinement by the Court of Appeals, "implied malice," i.e., "conduct of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others";

(3) "are to punish the wrongdoer, to teach him not to repeat his wrongful conduct, and to deter others from engaging in the same conduct";

(4) "must relate to the degree of culpability exhibited by a particular defendant and that party's ability to pay";

(5) "represent a civil fine, and as such, should be imposed on an individual basis"; and

(6) may be awarded only upon proof of actual loss and thus may *not* be awarded unless there is also an award of compensatory damages.

*Id.* at 715–16, 596 A.2d 687 (emphasis in original) (citations omitted). Taken together, Judge Wilner said, these principles "reasonably accommodate [the defendant's] interest in rational decision-making and [the State's] interest in mean-

ingful individualized assessment of appropriate deterrence and retribution." *Id.* at 716, 596 A.2d 687 (*quoting Haslip, supra,* 111 S.Ct. at 1044). In *Alexander,* because the trial court gave none of these instructions, or any other instructions with regard to the assessment of punitive damages against Alexander & Alexander, we reversed.

In the case at hand, the trial judge gave the following instructions to the jury on punitive damages:

> If you award plaintiff damages to compensate him for the actual injury he suffered, then you're allowed, but you're not required, to go one step further and award punitive damages against the defendant, but only if you find that the defendant's employees acted the way they did because of malice or intent to cause injury or damage or loss. And the purpose of that is to deter others from action in a similar manner in the future.
>
> Now, actual malice, in the legal sense, exists if the conduct complained of was performed in such a way and under such circumstances as to show that it was without legal justification or excuse and it also was influenced or motivated by hatred or spite or was performed in order to intentionally or deliberate[ly] injure or cause damage or loss to another person.
>
> Implied malice or implied intent exists under the law where the law considers that malice exists if, in light of the risks and dangers which were known or should have been known to exist at the time, the conduct complained of was performed in such a way and under such circumstances as to show that it was so reckless or outrageous as to indicate a disregard for the rights or safety of others or conscious indifference for the consequences.
>
> It is not necessary to show that such conduct was influenced or motivated by hatred or spite, or was performed in order to intentionally or deliberately injure or cause damage or loss to another person.

These instructions do not set forth all the principles articulated in *Alexander.* In *Alexander,* however, we did not hold that due process required that a jury be given

instructions on each and every one of the stated principles. Rather, we simply held that each principle would be a "proper subject for jury instruction." *Alexander, supra,* 88 Md.App. at 716, 596 A.2d 687. Furthermore, although Market Tavern objected at trial to the "whole concept of punitive damages," it did not request different instructions or suggest that the instructions given were standardless or violated due process. In contrast to the situation in *Alexander (Haslip* "had not been decided, or even argued" when the case was tried, *Alexander, supra,* 88 Md.App. at 705–09, 596 A.2d 687), here *Haslip* had been decided prior to the time of trial. Indeed, Market Tavern cited *Haslip* at trial and in a post-trial motion—not in support of a constitutional challenge, but only for the proposition that an employer may not be held vicariously liable for punitive damages for the intentional torts of an employee. Thus, it well may be that Market Tavern has not preserved any objections to the jury instructions. *See Alexander, supra,* 88 Md.App. at 708, 596 A.2d 687. *See also Robertson Oil Co., Inc. v. Phillips Petroleum Co.,* 930 F.2d 1342, 1347 (8th Cir.1991) (where plaintiff's requested jury instruction "did not elaborate any further on the standard for setting the amount of punitive damages," plaintiff waived its right to complain about alleged defect).

In any event, particularly in light of Market Tavern's failure to request any instruction on the additional standards set forth by Judge Wilner in *Alexander* (but established in prior case law), the instructions at issue here were not so "standardless" as to offend the due process clause.[2]

---

**2.** Nor, contrary to Market Tavern's claim, is reversal required because of "[a] bizarre [jury] instruction that punitive damages might or might not be taxable." Market Tavern does not explain how, if at all, this instruction prejudiced it. Assuming that the instruction was erroneous, an erroneous instruction as to the measure of damages does not require reversal if the damages awarded are not excessive and fairly represent the damages shown by the evidence. *W.B. & A. Rwy. Co. v. Fingles,* 135 Md. 574, 581, 109 A. 431 (1920); *N.Y.P. & N.R. v. Produce Exchange,* 122 Md. 215, 229–30, 89 A. 433 *affirmed,* 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916); *Dolby v. Laramore,* 121 Md. 618, 623,

The instructions given were quoted practically verbatim from *Maryland Pattern Jury Instructions* 10:6 (1991) (which should be revised in light of the careful compendium set forth in *Alexander*) and were substantially similar to those upheld by the Supreme Court in *Haslip*. *See supra,* note 1. The only deviation from the Maryland pattern jury instructions, and the *Haslip* instructions, in the instructions at issue here, is the failure to mention that one of the purposes of such an award is to *punish* a wrongdoer. "Punitive damages," however, denotes, by definition, damages for the purpose of punishment. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616 (1981) (Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tort feasor).[3] The instructions informed the jury that the imposition of punitive damages was not mandatory, as well as apprised the jury of the severity of conduct required to support an award of punitive damages and the nature and purpose of such an award. Thus, the jury instructions on punitive damages, although not perfect, were certainly not standardless, and thus conform to the due process requirements set forth in *Haslip*.[4]

---

89 A. 442 (1913); *Philadelphia, B. & W.R. Co. v. Diffendal,* 109 Md. 494, 72 A. 193 (1909).

**3.** *See also Owens–Illinois v. Armstrong,* 326 Md. 107, 604 A.2d 47 (1992) (punitive damages are "as the name implies, punitive in nature"); *McDermott v. Kansas Pub. Serv. Co.,* 238 Kan. 462, 712 P.2d 1199, 1201 (1986); *Norman's Heritage Real Estate Co. v. Aetna Cas. & Sur. Co.,* 727 F.2d 911, 914 (10th Cir.1984); *Abbey Medical/Abbey Rents, Inc. v. Mignacca,* 471 A.2d 189, 195 (R.I.1984); 8 Am.Jur.P. & Pr.Forms (Rev.) Damages Forms 311, 312 (1982) (it is not always imperative for the court, in instructing the jury, to define the meaning of the term "punitive damages"); Black's Law Dictionary 352 (Rev. 5th ed. 1979) (defining "punitive" as "relating to punishment; having the character of punishment or penalty; inflicting punishment or a penalty" and defining "punitive damages" as damages "to punish the defendant for his evil behavior").

**4.** The vast majority of courts reviewing jury instructions under the *Haslip* guidelines have upheld the instructions. *See, e.g., Braswell v. Conagra, Inc.,* 936 F.2d 1169, 1176 (11th Cir.1991); *Wolf v. Goodyear*

■ Nor was the circuit court's review of the verdict inadequate. Judge Wilner stated that the trial court, in reviewing a punitive award, should be guided by the same principles as the jury, and consider "whether the award, by reason of its amount, fails to serve its proper purpose." *Alexander, supra,* 88 Md.App. at 717, 596 A.2d 687. In considering Market Tavern's motion for a new trial, the trial court touched upon many of the standards outlined in *Alexander.* For example, the court had a substantial discussion with counsel for both sides on the requirement of malice, during which the court opined that the evidence presented to the jury established that there were "the kinds of gross negligence in the operation of Market Tavern by its various agents such that the trier of fact was able to draw the inference that there was malice." Furthermore, the trial court undertook a thorough discussion of the propriety of imposing vicarious liability for punitive dam-

---

*Tire & Rubber Co.,* 808 S.W.2d 868, 874 (Mo.App.1991); *Hospital Authority of Gwinnett County v. Jones,* 261 Ga. 613, 409 S.E.2d 501, 503, *cert. denied,* —— U.S. ——, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992); *Oberg v. Honda Motor Co.,* 108 Or.App. 43, 814 P.2d 517 (1991); *Heideman v. American Family Ins. Group,* 163 Wis.2d 847, 473 N.W.2d 14 *review denied,* 475 N.W.2d 584 (Wis.1991). In fact, many have upheld instructions that were less comprehensive than those given by the court in *Haslip,* as long as the instructions did not give the jury unlimited discretion in determining punitive damages. *See, e.g., Robertson Oil Co., Inc. v. Phillips Petroleum Co. Inc.,* 930 F.2d 1342, 1347 (8th Cir.1991); *American Employers Ins. Co. v. Southern Seeding Serv.,* 931 F.2d 1453, 1458 (11th Cir.1991); *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350, 354 (1991); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 686 (Tex.App.1991); *K–Mart Corp. v. Pearson on Behalf of Ramos,* 818 S.W.2d 410, 417 (Tex.App.1991). In the few cases in which courts in other jurisdictions have reversed punitive damages awards, they did so because of inadequate post-trial review, *see, e.g., Johnson v. Hugo's Skateway,* 949 F.2d 1338 (4th Cir.1991); *Robertson Oil Co., Inc. v. Phillips Petroleum, Inc.,* 930 F.2d 1342 (8th Cir.1991); *American Employers Ins. v. Seeding Serv.,* 931 F.2d 1453 (11th Cir.1991), because *Haslip* had not been decided when the case went to trial, *see, e.g., Union Nat'l Bank of Little Rock v. Mosbacher,* 933 F.2d 1440 (8th Cir.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992), or because the jury was given virtually unlimited discretion in awarding punitive damages, *see, e.g., Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 105 (4th Cir.1991).

ages, concluding that "the jury, as the trier of fact, could rationally draw the inference from the facts that they had before them that ... the principal or managerial agent ... authorized the doing and the manner of the act by standing idly by when it occurred ... or ratified or approved the act again by not actively calling the police when it occurred."

In considering the amount of the punitive award in relation to the fault of the parties, and the effect of the conduct involved, the court declined to grant the requested substantial remittitur,[5] stating:

> As to the $140,000 noneconomic damages and the $150,-000 punitive damages, I think there was sufficient evidence in the record for the jury to draw the inferences that they [sic] drew with respect to the plaintiff meeting the standard of the preponderance of the evidence in proving those damages.

> We are, in fact, talking about a broken jaw at the time when a person was waiting for admittance into the Marine Corps and its psychological and physical effects, and I think that there was a causal relationship between what is in evidence and the two amounts that the jury awarded; and, therefore, I will deny both remittitur and a new trial with respect to the damages.

The trial court here, like the trial court in *Haslip*, stated on the record its reasons for upholding the jury award of punitive damages. We are satisfied that it undertook a "meaningful and adequate review," *Haslip, supra*, 111 S.Ct. at 1024, of the jury's award of punitive damages and of whether the award "serves its proper purpose," *Alexander, supra*, 88 Md.App. at 717, 596 A.2d 687. Thus, the post-trial review complied with due process standards.

■ Finally, we do not believe that the amount of the $150,000 punitive award violates due process standards.

---

5. The trial court did grant a remitter in the amount of $655.25 to conform the compensatory damage award to the ad damnum clause.

Unlike the awards in both *Haslip* and *Alexander*,[6] the award here was in one-to-one proportion to the compensatory award, and relatively modest as compared with some punitive damage awards rendered in Maryland cases. *See* cases discussed in *Alexander, supra,* 88 Md.App. at 720, 596 A.2d 687. Furthermore, while the conduct involved in both *Haslip* and *Alexander* "did not endanger the public health or safety ... [and] was not life-threatening to anyone," *id.* at 721, 596 A.2d 687, the conduct involved in the case at bar was dangerous to the public safety and might well have been life-threatening. In sum, we find that the procedure employed to determine the propriety and amount of the award is constitutional and the award is "reasonable in [its] amount and rational in light of [its] purpose to punish what has occurred and to deter its repetition." *Haslip, supra,* 111 S.Ct. at 1045.

## B. Vicarious Liability

The Court of Appeals in *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966 (1982), held that an employer may be held vicariously liable for punitive damages for the wilful torts of an employee committed in the scope of employment even where the employer does not authorize, participate in, or ratify the employee's conduct. *Id.* at 136–37, 442 A.2d 966. Market Tavern claims, however, that this decision is "not dispositive of the present case" for two reasons.

■ First, Market Tavern cites *Haslip* for the proposition that when an employer "did not benefit from the assault," and was not "at fault independently," an award of punitive

---

6. The "punitive damages component" of the award in *Haslip* was $840,000, more than four times the amount of compensatory damages. *Haslip, supra,* 111 S.Ct. at 1037, n. 2. The original award of punitive damages in *Alexander* was $40 million (160 times the compensatory award); the trial judge, however, reduced the award by $27.5 million because the original verdict "shocked his conscience." *Alexander, supra,* 88 Md.App. at 708, 596 A.2d 687. We vacated the award noting, *inter alia,* that it was "far in excess of the actual harm caused to [the appellee], representing nearly fifty times the essentially liquidated compensatory damage." *Id.* at 720, 596 A.2d 687.

damages against it is not proper. The short answer is that *Haslip* does not stand for this proposition. Rather, the Supreme Court in *Haslip,* in response to an insurance company's claim that its salesman was not acting as its agent when he defrauded customers, noted that "the insurer derived economic benefit from those life insurance sales," therefore, the company "cannot plausibly claim that" its salesman was not acting as its agent when he defrauded respondents. *Haslip, supra,* 111 S.Ct at 1041. Thus, benefit to the employer was *evidence* of an employer-employee relationship, *not* a prerequisite to finding such a relationship, or to an award of punitive damages. Indeed, the *Haslip* court upheld Alabama's common law practice of imposing punitive damages on a corporation when its agent commits intentional fraud, stating, "Imposing liability without independent fault deters fraud more than a less stringent rule." *Id.* Moreover, even if benefit to the employer was required for an award of punitive damages on the basis of vicarious liability, such benefit is present in this case. Market Tavern benefitted from its security personnel's work keeping Hammerjacks safe for patrons. *See Wilson Amusement Co. v. Spangler,* 143 Md. 98, 121 A. 851 (1923) (doorkeeper for movie theater who forcibly ejected and then assaulted drunken customer who sought entrance acted in furtherance of his master's service within his duty to eject "undesirables").

■ Second, Market Tavern suggests that because no offending employee of the company was "identified, in the complaint or otherwise, or joined, as a defendant, nor was he deposed, nor did he testify," vicarious punitive damages cannot be imposed on Market Tavern. The company does not cite any case in Maryland, or elsewhere, which so holds. In fact, courts in other jurisdictions have held an employee is not a necessary party to a suit against an employer on the theory of vicarious liability. *See, e.g., Rieser v. District of Columbia,* 563 F.2d 462, 469 n. 39 (D.C.Cir.1977) (compensatory damages awarded; punitive damages denied because of lack of evidence that higher government officers

ratified or participated in misfeasance of employee); *O'Donnell v. K-Mart Corp.*, 100 A.D.2d 488, 474 N.Y.S.2d 344, 346 (1984) (punitive damages awarded); *McFadden v. Turner*, 159 N.J.Super. 360, 388 A.2d 244, 245 (1978) (compensatory damages awarded); *Hartford Accident and Indem. Co. v. Transport Indem. Co.*, 242 Cal.App.2d 90, 51 Cal.Rptr. 168, 170 (1966) (declaratory judgment action). *See also*, Master and Servant, 57 C.J.S.2d § 613.

This holding is entirely consistent with Maryland law. In Maryland, a plaintiff is required to join another party as a defendant in an action only in certain specific circumstances; otherwise, joinder is permissive.[7] None of these specific circumstances are present here. Nor does Maryland law require a plaintiff to identify the employee by name in the complaint. "A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense." Md. Rule 2–303(b). A complaining party must "allege the cause of action with reasonable certainty, clearness and accuracy so as to apprise the defendant of the nature of the claim brought against him." *Campbell v. Welsh*, 54 Md.App. 614, 631, 460 A.2d 76 (1983). A third person suing an employer for injuries sustained has the burden of pleading and proving the requisite facts to establish vicarious liability. The necessary facts include that an employer/employee relationship existed between defendant and the person who allegedly caused the injury, that the tort was committed while the employee was acting within the scope of employment or under express or implied authorization from the employer, and that the employee's tort caused the injury. *Globe Indemnity Co. v. Victill Corp.* 208 Md. 573, 584, 119 A.2d

---

7. Maryland Rule 2–211 requires joinder of parties if in the person's absence (1) complete relief cannot be accorded among those already parties, or (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

423 (1955); M.L.E., Employment, Work and Labor § 125 at 370 (1962).

Bowen alleged sufficient facts in the complaint to show his entitlement to relief and to notify Market Tavern of the nature of his claims against it; Bowen was not required to identify a specific employee by name. Similarly, Bowen was not required to depose that employee, or anybody else. Discovery and trial strategy are purely discretionary with counsel. *See* Md. Rule 2–401. Market Tavern, of course, had every right to depose the employee, or join him as a defendant. The company chose not to do so. Similarly, Bowen was not required to call the employee as a witness at trial; again, of course, Market Tavern could have subpoenaed the employee as its own witness.

Finally, even if specific identification of the employee involved was a requirement to establish vicarious liability for punitive damages on the part of the employer, that requirement was met here. Deborah Szarko, at trial, identified Edward Lloyd as the employee involved. She testified that Bowen was "kicked in the face and punched" by "Eddie and another Hammerjacks security guard," and that after "a code was called" over the intercom system, "four people, two including Eddie and the other guy that was there, and then two other guys, got Danny off the floor and carried him out to the exit door." Market Tavern presented no evidence that directly contradicts this testimony, although counsel for Market Tavern attempted to impeach Szarko's testimony with a prior inconsistent statement upon cross examination. Szarko, given the opportunity to explain the apparent inconsistency, had a plausible explanation. It is up to the jury to judge the credibility of witnesses. *Aravanis v. Eisenberg,* 237 Md. 242, 262, 206 A.2d 148 (1965); *Montgomery County v. Voorhees,* 86 Md.App. 294, 304, 586 A.2d 769 (1991); *Cluster v. Cole,* 21 Md.App. 242, 250, 319 A.2d 320 (1974). The jury here gave credence to Szarko's identification of Lloyd. We decline to second

guess the trier of fact.[8]

## III. *Pre-trial Issues*

The trial court was called upon to make several pre-trial rulings. Market Tavern argues that it erred in three of these rulings, *i.e.*, in denying Market Tavern's motion for a continuance, in refusing to permit Market Tavern's corporate counsel "the right to examine witnesses," and in denying Market Tavern's motion in limine.

### A. Continuance

■ On April 2, 1991, two weeks before trial, Market Tavern moved for a postponement because it had been unable to contact several "essential witnesses," including former Hammerjacks manager Thomas Perry, and former security employees Edward Lloyd and Samuel Clemmons. The trial court denied the motion.

A trial court may continue a trial on motion of any party or on its own initiative. Md.Rule 2–508(a). One of the grounds for granting a postponement is the absence of a necessary witness; however, a motion for a continuance on this ground must be supported by an affidavit containing certain information. Md.Rule 2–508(c).[9] Market Tavern

---

8. Our conclusion is unaffected by the Court of Appeals' recent opinion in *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992). *Zenobia, inter alia,* overrules prior case law to require a "clear and convincing" standard of proof in punitive damage cases. Judge Eldridge in *Zenobia,* however, carefully explained this new requirement applies only to *Zenobia* itself, its companion cases, and "to all trials commencing and trials filed or in progress on or after the date this opinion is filed." *Id.* at 470, 601 A.2d 633. The trial in the case at hand began in April 1991 (almost a year prior to the date on which the *Zenobia* opinion was filed); thus, the clear and convincing standard is inapplicable here. The *Zenobia* court also overruled prior case law to require proof of the actual malice in order to obtain punitive damages in cases involving nonintentional torts. The case at hand, which involves an intentional tort, is unaffected by that holding. Moreover, even if that holding was applicable here since Market Tavern failed to object to the implied malice standard at trial or to raise this issue on appeal, it has not been preserved for review. 325 Md. at 471, 601 A.2d 633.

9. The affidavit must set forth:

filed no affidavit with its motion, nor did it set forth required information elsewhere, *e.g.,* that it had exercised "reasonable diligence" to locate the witness or that the witness could be located within "a reasonable time." Moreover, the case had been pending for over three years when Market Tavern requested the continuance, and Market Tavern had been aware of the trial date for three months.

The ruling on a motion for continuance rests in the sound discretion of the court and will not be disturbed on appeal unless there is an abuse of that discretion. *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 28, 320 A.2d 266 (1974); *Brooks v. Bast,* 242 Md. 350, 354, 219 A.2d 84 (1966); *Thanos v. Mitchell,* 220 Md. 389, 392, 152 A.2d 833 (1959); *In re McNeil,* 21 Md.App. 484, 499, 320 A.2d 57 (1974). *See also Cumberland & Westernport Transit Co. v. Metz,* 158 Md. 424, 454, 149 A. 565, *appeal dismissed,* 282 U.S. 801, 51 S.Ct. 40, 75 L.Ed. 720 (1930). It is clear that the trial court here did not abuse its discretion in denying Market Tavern's request for a continuance. *See Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 320 A.2d 266 (1969) (no abuse of discretion when an "eleventh hour" request for a continuance is denied in a case which has been pending for 26 months); *Nickerson v. State,* 22 Md.App. 660, 325 A.2d 149 (1974) (no abuse of discretion where no accompanying affidavits in support of motion for continuance).

### B. Refusal to Permit Corporate Counsel to Examine Witnesses

Market Tavern claims that the trial court's decision not to allow its corporate counsel "the right to examine

---

(1) the intention of the affiant to call the witness at the proceeding, (2) the specific facts to which the witness is expected to testify, (3) the reasons why the matter cannot be determined with justice to the party without the evidence, (4) the facts that show that reasonable diligence has been employed to obtain the attendance of the witness, and (5) the facts that lead the affiant to conclude that the attendance or testimony of the witness can be obtained within a reasonable time.
Md.Rule 2–508(c).

witnesses" to protect its interests was clear error which deprived Market Tavern of effective representation. Less than two weeks before trial, counsel hired by Market Tavern's insurance company entered their appearances on behalf of the corporation. Counsel for Market Tavern, who had represented both the corporation and Principio, its president, from the inception of the suit, struck his appearance as counsel for the corporation and remained in the case as counsel for Principio only. Immediately prior to trial, on April 15, the parties entered into a stipulation dismissing Principio as a defendant in the case. This left the corporation as the sole defendant. Corporate counsel for Market Tavern then requested that he "be permitted to intervene as an additional counsel with adverse interest to [the insurer] so that [he] would, as well as [counsel for the insurer], be permitted to participate to the extent of making an opening statement, dealing with each witness, [and] making a closing statement." Corporate counsel argued that he should be permitted to "intervene to protect the corporate interests on those matters that are not covered [under the insurance policy, *i.e.*, the battery count]."

The insurer did not oppose the motion, but Bowen did, arguing that the intervention rule was not applicable here because Principio, the only party still represented by corporate counsel, was no longer a party to the suit. What corporate counsel was actually requesting, Bowen asserted, is that he be recognized as co-counsel for Market Tavern, along with counsel for the insurer. Bowen had no objection to corporate counsel being named co-counsel as long as there would be no "multiple examination of witnesses on behalf of the one party."

The trial court resolved the dispute as follows:

I understand. I think there's a niche in between that you've all missed. Basically, if Market Tavern is covered by [the] insurance company with respect to one count, and it's not covered by the insurance policy with respect to another count, and there's no rule regulating the entry of counsel into the case—because I've just looked, and

there's not—then essentially what you are ... is co-counsel with [counsel for insurer].

[Plaintiff's counsel's] point, however, is well taken, that there can't be sort of a duplication of effort; that your [sic] co-counsel, that basically what you've got to do is internally divide among yourselves the labor, so that if there's points where there's not an insurance policy, then you ought to be the lead counsel with respect to those points and examine the witnesses that are offering facts concerning those points, and that where there are witnesses that are concerning themselves with the particular count where there is insurance, then [counsel for insurer] would be the lead counsel.

The only place where I see where there would be a possible duplication of effort might be in closing argument.

The trial court then asked counsel for Bowen if he would object to counsel for insurer and corporate counsel dividing the closing argument with respect to the two counts. Bowen did not object.

Corporate counsel, however, declined the court's offer to name him as co-counsel, stating "No, Your Honor. Unless I can participate fully, [counsel for insurer and I] discussed it, and we think that creates an impossible situation; it makes a conflict between us going on throughout the course of the trial, which we think is worse than the other alternative." Corporate counsel further rejected the trial court's suggestion that he withdraw his dismissal motion as to Principio, and thus remain in the case representing Principio's interests.[10]

Market Tavern cannot not now claim that the trial court's ruling deprived it of "effective representation." The fact is, the trial judge gave corporate counsel every opportunity

---

10. Neither corporate counsel nor insurance counsel (nor any other representative of Market Tavern) requested that the trial court permit corporate counsel to *replace* insurance counsel at trial. *Compare Allstate Ins. Co. v. Atwood,* 319 Md. 247, 256–259, 572 A.2d 154 (1990).

to share in the representation of Market Tavern and, in the judge's words, "be the lead counsel with respect to [non-covered conduct] and examine the witnesses that are offering facts concerning those points." Corporate counsel, however, insisted that he had the right to "intervene and to be able to make my own opening statement, to examine my own witness—each and every witness, and my own closing argument." In fact, corporate counsel had no right to intervene. *See* Md.Rule 2–214. Indeed, permitting him to do what he demanded, *i.e.*, "make his own opening statement, closing argument" and examination "of each and every witness," would undoubtedly result in cumulative evidence and might well have unfairly prejudiced Bowen.[11]

Trial courts have the widest discretion in the conduct of trials, and such discretion should not be disturbed on appeal in the absence of clear abuse. *Brooks v. Daley*, 242 Md. 185, 196–97, 218 A.2d 184 (1966); *Plank v. Summers*, 203 Md. 552, 554–55, 102 A.2d 262 (1954); *Thrifty Diversified, Inc. v. Searles*, 48 Md.App. 605, 615, 429 A.2d 270 (1981); *Vergie M. Lapelosa, Inc. v. Cruze*, 44 Md.App. 202, 214, 407 A.2d 786 (1979). The trial court here did not abuse its discretion in limiting corporate counsel's role to that of co-counsel in order to avoid duplicative efforts, cumulative evidence, and possible prejudice. *See Drug Fair of Md., Inc. v. Smith*, 263 Md. 341, 355, 283 A.2d 392 (1971); *Loma v. Comptroller of Treasury*, 88 Md.App. 50, 54, 591 A.2d 1311 (1991).

### C. Motion in Limine

At the beginning of trial, Market Tavern moved for an order in limine prohibiting argument to the jury by Bowen that Hammerjacks was negligent in allowing the

---

11. The trial court recognized this possibility:
 Here, [Principio] was sued, and you let them out of the suit, and they're seeking to get back in without—to get all the benefits of possibly persuading the trier of fact to do something that helps them; yet, at the same time, not be exposed to the liability of being the defendant.

underage Bowen access to the premises and in serving him alcohol. Bowen's counsel assured the judge that he was not claiming "that failing to better check [Bowen's] ID is part and parcel of . . . the atmosphere in the place that led to his beating." The judge denied the motion; he indicated, however, that if "it sounds in any way as though Market Tavern has been prejudiced" by such an argument, he would give the jury a curative instruction.

Market Tavern contends that references to Bowen's underage status made by his counsel during trial were "prejudicial and invited the jury to impose 'dram shop' liability unrecognized in Maryland." Market Tavern, however, failed to object at any time or in any manner to any of the references made at trial. Nor did Market Tavern request the curative jury instruction which the trial judge had offered. Market Tavern insists that any objection to the comments or request for a curative instruction would have aggravated the prejudice. It urges us to review the denial of the motion in limine as if it was "an overruling of a continuing objection within the meaning of Rule 2–517(b)" or as an "other ruling or order" under Rule 2–517(c). It is clear, however, that a motion in limine is not the equivalent of a continuing objection. *Beghtol v. Michael*, 80 Md.App. 387, 393–94, 564 A.2d 82 (1989). If a trial judge denies a motion in limine, thus allowing the admission of certain evidence, the moving party must object at the time the evidence is actually offered to preserve the objection for appellate review. *Prout v. State*, 311 Md. 348, 356, 535 A.2d 445 (1988). Thus, Market Tavern waived its right to raise the issue on appeal.[12]

---

12. Had we considered the issue, we would have found that the trial court did not abuse its discretion in denying the motion in limine. Evidence or argument that Market Tavern sold liquor to Bowen could not lead a jury to impose improper "dramshop" liability on Market Tavern. Those states which impose "dramshop" liability "impos[e] civil liability upon vendors of intoxicating liquors for damages caused by their intoxicated customers to other persons." *Felder v. Butler*, 292 Md. 174, 180, 438 A.2d 494 (1981). *See also Moran v. Foodmaker, Inc.,*

## IV. *New Trial Motion*

▆▆▆ Market Tavern argues that the trial court erred in denying its motion for a new trial because of newly discovered evidence. This "new evidence," according to Market Tavern, was the fact that in a 1989 proceeding in the District Court of Maryland for Baltimore County, Bowen stood trial on charges of disorderly conduct, battery, malicious destruction of property, and resisting arrest. The charges stemmed from an altercation between Bowen and a Baltimore County police officer who responded to a complaint of a loud party. Bowen, however, was not convicted of any charge. Rather, he received probation before judgment on the battery and resisting arrest counts; the malicious destruction of property count was stetted, and nolle prosequi was entered on the disorderly conduct charge.

At his deposition, Bowen was asked a long series of questions about his tenure in the Marines. In the midst of this series of questions he was asked whether, since he had reached the age of 18 years old, he had "ever been involved in a proceeding where you had a right to counsel or waived that right." Bowen replied that he had waived counsel in two disciplinary incidents while in the Marines; he failed, however, to mention the 1989 District Court proceeding.

▆▆▆ In order to grant a new trial on the grounds of newly discovered evidence, a trial court must find that (1) the evidence was discovered since the trial; (2) there was diligence in attempting to discover the evidence on the part of the movant; (3) the evidence relied on is not cumulative or impeaching; (4) it is material to the issues involved; and (5) on a new trial, the newly discovered evidence would probably produce a different result. *Great Southwest Fire*

---

88 Md.App. 151, 594 A.2d 587, *cert. denied,* 325 Md. 17, 599 A.2d 90 (1991). Here there was no suit against Market Tavern by a third party for injury caused by an intoxicated customer. Rather, it was the intoxicated customer himself, Bowen, who was injured and who sued the vendor—not because the vendor sold alcoholic beverages to him but because its security personnel beat him up.

*Ins. Co. v. S.M.A., Inc,* 59 Md.App. 136, 147–48, 474 A.2d 950, *cert. denied,* 301 Md. 42, 481 A.2d 801 (1984); *Angell v. Just,* 22 Md.App. 43, 54, 321 A.2d 830 (1974). The granting or denial of a motion for a new trial is a matter within the discretion of the trial court and will not be reversed on appeal absent the abuse of that discretion. *A.S. Abell Co. v. Skeen,* 265 Md. 53, 59, 288 A.2d 596 (1972); *I.O.A. Leasing Corp. v. Merle Thomas Corp.,* 260 Md. 243, 249, 272 A.2d 1 (1971); *Brinand v. Denzik,* 226 Md. 287, 292, 173 A.2d 203 (1961); *Martin v. Rossignol,* 226 Md. 363, 366–67, 174 A.2d 149 (1961); *Walker v. Hall,* 34 Md.App. 571, 591, 369 A.2d 105 (1977); *Murphy v. Board of County Comm'rs,* 13 Md.App. 497, 513, 284 A.2d 261 (1971).

The trial court, in denying Market Tavern's motion, indicated that the questions asked by Market Tavern at Bowen's deposition were not precise, and that Bowen was "literally responsive" and not deceptive in his answers to the questions posed. The court further found that the evidence would have been cumulative, that Market Tavern had not acted with due diligence, and that the evidence was not admissible in any event. Our review of the record confirms that the trial court did not abuse its discretion in denying the new trial motion for these reasons.

## V. *Sufficiency of the Evidence*

Market Tavern challenges the trial court's denial of its motion for judgment and motion for a new trial based on insufficient evidence. Specifically, Market Tavern claims that there was insufficient evidence for a jury to find that a battery was committed by Market Tavern employees in the scope of their employment.

Maryland Rule 2–516, governing motions for judgment, requires submission of an issue to the jury if there ·is any evidence, however slight, legally sufficient to present a question for the jury. *Beahm v. Shortall,* 279 Md. 321, 342, 368 A.2d 1005 (1977); *Mass Transit Admin. v. Miller,* 271 Md. 256, 259, 315 A.2d 772 (1974). In determining whether a plaintiff has produced sufficient evidence to

go to the jury, the trial court must consider the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, here, Bowen. *Twelve Knots Ltd. Partnership v. Fireman's Fund Ins. Co.*, 87 Md.App. 88, 98, 589 A.2d 105 (1991); *Higgins v. City of Rockville*, 86 Md.App. 670, 673, 587 A.2d 1168, *cert. denied*, 323 Md. 309, 593 A.2d 669 (1991); *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 353, 517 A.2d 1122 (1986).

A grant or denial of a motion for a new trial based on insufficient evidence is within the discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *Thodos v. Bland*, 75 Md.App. 700, 706, 542 A.2d 1307 (1988) (and numerous cases cited therein). In determining whether there was such an abuse of discretion we must consider all of the facts and circumstances of the case. *Id.* at 710, 542 A.2d 1307. "If there is any competent, material evidence to support the factual findings below, the weight and value of such evidence must be left to the trier of facts." *Carling Brewing Co. v. Belzner*, 15 Md.App. 406, 412, 291 A.2d 175 (1972).

### A. Battery Committed by Employees

 Market Tavern contends that the testimony of Bowen and Ms. Szarko, was "inconsistent and vague," and thus constituted insufficient evidence that the battery of Bowen at Hammerjacks was committed by Hammerjacks security employees.

At trial, Bowen testified that, although he was unsure of the exact identity of his two assailants, the two individuals who had bodily carried him out and ejected him from Hammerjacks were wearing "Hammerjacks Security" jackets. Ms. Szarko testified that Bowen was "kicked in the face and punched" by "Eddie and another Hammerjacks security guard," and that after "a code was called" over the intercom system, "four people, two including Eddie and the other guy that was there, and then two other guys, got Danny [Bowen] off the floor and carried him out to the exit door." Market Tavern presented no evidence that directly

contradicted this testimony. Counsel for Market Tavern, on cross-examination, did attempt to impeach Ms. Szarko with a prior inconsistent statement; however, Ms. Szarko, given the opportunity to explain the apparent inconsistency, had a plausible explanation.[13] Considering this testimony in the light most favorable to Bowen, there is clearly enough evidence to present a jury question on the issue of whether a battery was committed by Hammerjacks employees, as well as to support the jury's factual findings. Thus the trial court did not err in submitting the issue to the jury; nor did it abuse its discretion in denying the motion for a new trial.[14]

## B. Scope of Employment

Market Tavern further argues that even if Hammerjacks security employees were responsible for Bowen's injuries, there was insufficient evidence that the conduct of

---

**13.** Market Tavern's vehement assertion, that *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 59 A.2d 313 (1947) and its progeny require the conclusion that Ms. Szarko's testimony was insufficient as a matter of law, is misplaced. Those cases simply hold that when a witness at trial "says in one breath that a thing is so and in the next breath that it is not so, his testimony is too inconclusive, contradictory and uncertain to be a basis for a legal conclusion." *Id.* at 537, 59 A.2d 313 (*quoting Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244 (1927)). Ms. Szarko, although acknowledging (and explaining) a pre-trial inconsistent statement, did not contradict herself at trial. Market Tavern has cited no case which holds that the testimony of a witness in Ms. Szarko's situation is "legally insufficient."

**14.** Market Tavern argues first in a very brief footnote in its brief and then in its reply brief that the trial court erred in admitting, over objection, personnel records of two employees to show that they were fired after the incident. Assuming it was error for the trial court to admit the personnel records, this error was harmless. In determining whether improperly admitted evidence prejudicially affected the outcome of a civil trial, we must consider the *probability*, not possibility, of prejudice from the improperly admitted evidence in light of the circumstances of the case. *State of Md. Deposit Ins. Fund Corp. v. Billman*, 321 Md. 3, 580 A.2d 1044, *on remand*, 88 Md.App. 79, 593 A.2d 684 (1990). Here, there was substantial other evidence of Lloyd's involvement in the battery to enable the jury to find liability on the part of Market Tavern. Thus, there was little, if any, probability that Market Tavern was prejudiced by the admission of the records.

these employees was within the scope of their employment. The company primarily relies on the Court of Appeals' recent opinion in *Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467 (1991). There, the court considered whether an alleged intentional tort committed by an off-duty police officer was within the scope of his employment. The court stated that the general test for determining if an employee's tortious acts are within the scope of his employment is:

[N]ot whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By "authorized" is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders.

*Id.* at 255, 587 A.2d 467. The test set forth in *Sawyer* is entirely consistent with prior Maryland law. For example, in *Cox v. Prince George's County*, 296 Md. 162, 460 A.2d 1038 (1983), the Court of Appeals held that a master "is responsible for the wrongful acts of his servant, even though they be wilful, or reckless, if the act done by the servant be within the scope of his employment, and in furtherance of his master's business." *Id.* at 170, 460 A.2d 1038 (*quoting Tea Company v. Roch*, 160 Md. 189, 153 A. 22 (1931)).[15] *See also Cate v. Schaum*, 51 Md. 299, 308

---

15. Market Tavern also argues, in passing, that "an improper instruction" on this subject was "proposed ... excepted to ... and substantially given." This argument is not borne out by the record. Bowen did propose the following instruction:

If ... you find the persons who injured the plaintiff were employees of the defendant [who] were acting within the scope of their employment, the defendant is liable to the plaintiff for damages, even if the employees' conduct was done in a wrongful or forbidden manner, or an intentional or a malicious manner.

When Market Tavern objected to this instruction, which was based on the Maryland pattern jury instructions and *Cox v. Prince George's County, supra,* the trial court proposed adding the following additional language:

(1879). The *Cox* court further stated that "an act may be within the scope of employment, even though forbidden or done in a forbidden manner ..., or consciously criminal or tortious." *Sawyer, supra*, 322 Md. at 255, 587 A.2d 467 (*quoting* Wood on Master and Servant § 279 (1877) (and numerous cases cited within)). *Cox, supra*, 296 Md. at 170, 460 A.2d 1038 (*quoting A & P Co. v. Noppenberger*, 171 Md. 378, 391, 189 A. 434 (1937) (and cases cited therein)).

The *Sawyer* court went on to outline four factors that may be taken into consideration by courts applying this general test: (1) "the conduct must be of the kind the servant is employed to perform"; (2) the conduct "must occur during a period not unreasonably disconnected from the authorized period of employment"; (3) the conduct must occur in a place "not unreasonably distant from the authorized area"; and (4) the conduct must be, at least in part, to serve the master. *Id.* (citations omitted). The court noted that, particularly in cases involving intentional torts committed by an employee, "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests ... or 'where the conduct of the servant is unprovoked, highly unusual, and quite outrageous,' " the conduct is outside the scope of employment. *Id.* 322 Md. at 256–57, 587 A.2d 467 (citations omitted).

The trial court, in denying Market Tavern's motion for judgment on this issue stated:

> On the other hand, if you find that the persons who injured the plaintiff either were not employees or were employees, but who were not acting within the scope of their employment, meaning that what they did was not foreseeable to the employer that any of his employees would do that in the scope of their duties, as opposed to something that would be foreseeable for the employer to expect or anticipate or worry about happening, then the verdict would have to be for the defendant.

Market Tavern did not object to the amended instruction. Accordingly, assuming that the instruction was erroneous, which is not at all clear, no objection to it has been preserved for our review.

[T]he fact that it occurred on the premises with a jacket [sic], with persons responding to a message over the intercom, and even though Mr. Principio says things that negate it ... there are other things when he said ... [that] there aren't any real rules; that if a trier of fact selectively picked and chose what he said and selectively picked and chose from the testimony as to the events, they could, without offending the dictates of logic, [conclude that the Hammerjacks employees were acting within the scope of employment].

Viewing the evidence in a light most favorable to Bowen, we agree with the trial court that there was sufficient evidence to justify submission of the issue to the jury. Principio testified at trial as to the duties of Hammerjacks security employees. According to him, their authorized duties included bodily restraining and even bodily removing patrons if necessary. The employees were authorized to break up fights, restore order, and defend themselves or others. Principio also testified that "nobody can have a fist at anybody." Ms. Szarko testified that Hammerjacks general manager, Thomas Perry, was within 10 feet from the scene when the incident occurred. There was no testimony that he took any action to halt the attack upon Bowen. Moreover, there was no evidence that Lloyd's conduct was personal or that he was acting to further his own interests. It was undisputed that the beating took place on Hammerjacks premises during normal working hours. Although a beating of a drunken patron by a bar's security personnel is outrageous, it does not appear to be either unprovoked (Bowen had, contrary to orders, again touched a woman patron's hair) or unusual.

In sum, there was sufficient evidence to support the factual finding of the jury, in light of the purpose of security employees at Hammerjacks, as well as the type of behavior of security guards that was authorized by management, that the battery occurred within the scope of security guards' employment by Hammerjacks. Thus, the trial

court did not err in denying Market Tavern's motion for judgment or the motion for a new trial on these grounds.[16]

## VI. *Compensatory Damages Award*

Market Tavern alleges that the compensatory damages award must be vacated because the trial court erred in allowing Bowen to argue that he should receive a certain amount per diem for the permanent damage he sustained from his injuries, in instructing the jury on Bowen's life expectancy, and because there was no "evidence of reasonableness of medical bills."

The Court of Appeals, in *Eastern Shore P.S.C. v. Corbett*, 227 Md. 411, 177 A.2d 701 (1961), ruled that the benefits gained from a per diem argument outweigh the disadvantages of the argument, but that such arguments "should be accompanied *if requested, or the trial judge, sua sponte, thinks it proper*, by cautionary instructions that the argument is not evidence and the jury alone must determine the proper verdict." *Id.* at 429, 177 A.2d 701 (emphasis added). In the case at bar, counsel for Bowen, in closing, argued that Bowen had some permanent injuries for which he was entitled to compensation. He suggested a figure of "just under $600 a year, which is just under $2 a day." Market Tavern objected to this line of argument, but

---

**16.** *See also Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 122 A.2d 457 (1956) (where employee employed for the purpose of apprehending and prosecuting shoplifters, his conduct of maliciously prosecuting and falsely imprisoning a customer who had been suspected of shoplifting was in scope of employment); *McCrory Stores v. Satchell,* 148 Md. 279, 129 A. 348 (1925) (although store manager had no explicit authority to assault a customer whom he suspected of shoplifting, store could be liable for alleged assault by manager since conduct was in general scope of his duty to protect store goods from theft); *Amusement Co. v. Spangler,* 143 Md. 98, 121 A. 851 (1923) (doorkeeper for movie theater who forcibly ejected and then assaulted drunken customer who sought entrance acted in furtherance of his master's service within his duty to eject "undesirables"); *Barabasz v. Kabat,* 86 Md. 23, 37 A. 720 (1897) (pastor who employed doorkeeper at a church and instructed him to keep out persons who had no ticket can be liable for unnecessary use of force by servant, even if pastor did not instruct or authorize servant to use force).

the trial court overruled the objection. The trial court instructed the jury that opening statements and closing arguments are not evidence and that the jury alone must determine the proper verdict. It did not make specific reference in its instructions to the per diem argument made by Bowen. Market Tavern, however, did not request an instruction on the per diem argument. Indeed, in its principal brief on appeal, Market Tavern did not even argue that the trial judge erred in failing to give a cautionary jury instruction; rather, it simply asserted that the per diem argument was "improper." That argument is meritless. *See Eastern Shore P.S.C. v. Corbett, supra; Giant Food Inc. v. Satterfield*, 90 Md.App. 660, 603 A.2d 877 (1992) ("It is clear that per diem arguments are permissible in this state"). (In its reply brief for the first time, Market Tavern mentions that no specific per diem instruction was given and that it was not given time to "rebut" the per diem argument. These claims were never made at trial and so are not preserved for appeal.) Thus, the trial court did not err in allowing counsel for Bowen to make a per diem argument in his closing.

Market Tavern claims the trial court should not have instructed the jury on Bowen's life expectancy because "[t]he only evidence of permanency was occasional sensitivity of front teeth to hot or cold." There was, however, ample evidence of permanency. Bowen testified to this sensitivity, as well as that his jaw still often hurt. Dr. Mitcherling confirmed these statements in his videotape deposition, testifying that Bowen would have a permanent sensitivity to hot and cold, that a wire would remain permanently in Bowen's jaw, and that Bowen has a permanent surgical scar. Moreover, Market Tavern did not object to Dr. Mitcherling's testimony, either at the deposition or when the videotape was played for the jury. *See Baltimore Transit Co. v. Smith*, 252 Md. 430, 439, 250 A.2d 228 (1969); *Thursby v. O'Rourke*, 180 Md. 223, 230, 23 A.2d 656 (1948). Thus, the trial court did not abuse its discretion in instructing the jury on Bowen's life expectancy.

■ Market Tavern further claims that there was no evidence to support the award of medical bills since "[t]he competence of Dr. Mitcherling to testify as to their reasonableness did not appear as of record." Although Dr. Mitcherling, in his videotape deposition, did not discuss the amounts of the bills for treatment and surgery, he did testify that they were fair and proper and those bills were then admitted at trial without objection. Indeed, the trial court specifically noted that Market Tavern was "not requiring Dr. Mitcherling to come down and testify they are fair and proper, he [Market Tavern's counsel] just reserves the right to argue that he disagrees with Dr. Mitcherling as to whether they are fair and proper." Hence, this issue is not preserved for review.

## VII. *Conclusion*

In sum, there was no error in any pre-trial rulings. There was sufficient evidence to support the jury's finding that a battery was committed by a Market Tavern employee against Bowen, and that the battery was committed in the scope of the employee's employment. Furthermore, there was sufficient evidence to support the jury's award of punitive and compensatory damages, and the award of punitive damage was neither unconstitutional nor improper. Finally, the trial court did not abuse its discretion in denying the new trial motion.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.